## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **MCC HOLDINGS** *doing business as* **CRANE RESISTOFLEX,**<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES,**<br><br>Defendant,<br><br>and<br><br>**ANVIL INTERNATIONAL, LLC,**<br><br>Defendant-Intervenor. | **Before: Timothy C. Stanceu, Judge**<br><br>**Court No. 18-00248** |

## OPINION AND ORDER

[Remanding a determination issued in response to court order in litigation contesting an agency ruling that certain merchandise is within the scope of an antidumping duty order on cast iron pipe fittings from the People's Republic of China]

Dated: August 26, 2021

*Peter Koenig*, Squire Patton Boggs (US) LLP, of Washington, D.C., for plaintiff. With him on the brief were *Jeremy Dutra* and *Christopher D. Clark*.

*L. Misha Preheim*, Assistant Director, U.S. Department of Justice, of Washington, D.C., for defendant. With him on the brief was *Michael Granston*, Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Joshua E. Kurland*, Trial Attorney. Of counsel on the brief was *Ian McInerney*, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, D.C.

*Daniel L. Schneiderman*, King & Spalding LLP, of Washington D.C., for defendant-intervenor.  With him on the brief was *J. Michael Taylor*.

Stanceu, Judge:  Plaintiff MCC Holdings dba Crane Resistoflex ("Crane"), an importer of certain ductile iron lap joint flanges ("Crane's flanges") commenced this litigation to contest an administrative decision by the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department") that its imported merchandise is within the scope of an antidumping duty order.

Before the court is a decision (the "First Remand Redetermination") that the Department submitted in response to the court's order in this litigation.  *Final Results of Redetermination Pursuant to Ct. Order* (Apr. 3, 2020), ECF No. 39 (Rem. P.R. Doc. 34)[1] ("*First Remand Redetermination*").

Concluding that Commerce failed to consider certain material evidence on the record and reached some conclusions that were unsupported by substantial evidence on that record, the court orders that Commerce reconsider its decision and correct the errors identified herein.

---

[1] All citations to documents from the administrative record are to public documents.  References cited as "P.R. Doc. __" are to documents on the original agency record; references cited as "Rem. P.R. Doc. __" are to documents placed on the record during Commerce's redetermination proceeding.

# I. Background

## A. Administrative Proceedings Culminating in the Antidumping Duty Order

In April 2003, Commerce issued an antidumping duty order on non-malleable cast iron pipe fittings from China (the "Order"). *Notice of Antidumping Duty Order: Non-Malleable Cast Iron Pipe [Fittings] From the People's Republic of China*, 68 Fed. Reg. 16,765 (Apr. 7, 2003) ("*Order*"). The Order resulted from an antidumping duty petition (the "Petition") filed in 2002. *Petition for Imposition of Antidumping Duties: Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China* (Feb. 21, 2002) (Rem. P.R. Docs. 18–21, Attach. I) ("*Petition*").

In response to the Petition, the U.S. International Trade Commission (the "ITC") initiated its "injury or threat" investigation (Inv. No. 731-TA-990) in February 2002. *Non-Malleable Cast Iron Pipe Fittings From China*, 67 Fed. Reg. 9,004 (Int'l Trade Comm. Feb. 27, 2002). Commerce published a notice (the "Initiation Notice") announcing its parallel antidumping duty "less-than-fair-value" ("LTFV") investigation in March 2002. *Notice of Initiation of Antidumping Duty Investigation: Non-Malleable Cast Iron Pipe Fittings From the People's Republic of China*, 67 Fed. Reg 12,966 (Mar. 20, 2002). The ITC issued the preliminary results of its investigation in April of that year, *Non-Malleable Cast Iron Pipe Fittings From China*, 67 Fed. Reg. 18,635 (Int'l Trade Comm. Apr. 16, 2002), concluding "that there is a reasonable indication that an industry in the United States is materially injured by reason of imports from China of non-malleable cast iron pipe

fittings . . . that are alleged to be sold in the United States at less than fair value (LTFV),"

*id.* at 18,635.

Commerce issued an affirmative preliminary determination of sales at less than

fair value, *Notice of Preliminary Determination of Sales at Less Than Fair Value and*

*Postponement of Final Determination: Non-Malleable Cast Iron Pipe Fittings From the People's*

*Republic of China*, 67 Fed. Reg. 60,214 (Sept. 25, 2002) and in early 2003 issued its final

affirmative LTFV determination, *Notice of Final Determination of Sales at Less Than Fair*

*Value: Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China*, 68 Fed. Reg.

7,765 (Feb. 18, 2003). The ITC reached a final affirmative "threat" determination. *See*

*Order*, 68 Fed. Reg. at 16,765 ("On March 24, 2003 . . . the International Trade

Commission (the ITC) notified the Department of Commerce (the Department) of its

final determination that the industry in the United States producing non-malleable cast

iron pipe fittings is threatened with material injury by reason of import of the subject

merchandise from the People's Republic of China (PRC)"). Issuance of the Order

followed. *Id.*

### B. The Scope Ruling Proceeding before Commerce

Crane filed a request with Commerce for a scope ruling (the "Scope Ruling

Request") on August 29, 2018, advocating that Commerce determine Crane's flanges,

imported from a supplier in China, to be outside the scope of the Order. *Non-Malleable*

*Cast Iron Pipe Fittings from China: Ductile Iron Lap Joint Flanges, Scope Request* (Aug. 29,

2018) (P.R. Doc. 1) ("*Scope Ruling Request*").

Commerce issued the decision contested in this litigation (the "Final Scope

Ruling") on November 19, 2018, which concluded that the Order included Crane's

flanges. *Final Scope Ruling on the Antidumping Duty Order on Non-Malleable Cast Iron Pipe*

*Fittings from the People's Republic of China: MCC Holdings dba Crane Resistoflex* (Nov. 19,

2018) (P.R. Doc. 16) ("*Final Scope Ruling*").

Crane commenced this action on December 19, 2018. Summons (Dec. 19, 2018),

ECF No. 1; Compl. (Dec. 19, 2018), ECF No. 2. On January 10, 2019, Anvil International,

LLC ("Anvil"), a domestic manufacturer and a petitioner in the antidumping duty

investigation culminating in the Order, filed a motion to intervene, which the court

granted. Mot. to Intervene as a Matter of Right (Jan. 10, 2019), ECF No. 7; Order

[Granting Mot. to Intervene] (Feb. 1, 2019), ECF No. 15. Crane moved for judgment on

the agency record on August 23, 2019. Pl. MCC Holdings dba Crane Resistoflex's Rule

56.2 Mot. for J. on the Agency R. (Aug. 23, 2019), ECF No. 27.

In response to Crane's motion for judgment on the agency record, defendant

filed an unopposed motion on December 30, 2019 that this case be remanded to

Commerce in light of this Court's decision in *Star Pipe Prods. v. United States*, 43 CIT __,

365 F. Supp. 3d 1277 (2019) ("*Star Pipe I*"). Def.'s Unopposed Mot. to Stay Briefing

Schedule and to Grant Voluntary Remand (Dec. 27, 2019), ECF No. 32. The court

granted defendant's motion in part and, considering the scope of the Department's

requested remand too narrow, issued an order to remand the scope determination to

Commerce for reconsideration in the entirety.  [Remand] Order 2 (Jan. 7, 2020), ECF

No. 33 (directing Commerce to "reconsider on remand all aspects of its scope ruling,

including all findings of fact and conclusions of law").

   During the remand proceeding, Commerce placed new factual information on

the administrative record, including excerpts from the Petition, and provided interested

parties the opportunity to "rebut, clarify, or correct" the new factual information.

*Antidumping Duty Order on Non-Malleable Cast Iron Pipe Fittings from the People's Republic*

*of China:  MCC Holdings dba Crane Resistoflex Scope Remand Redetermination* 1 (Jan. 17,

2020) (Rem. P.R. Docs. 18–21).  Crane and Anvil filed responses to the Department's

new factual information and placed additional new factual information on the record.

*Non-Malleable Cast Iron Pipe Fittings From The People's Republic Of China/Submission Of*

*Factual Information* (Jan. 24, 2020) (Rem. P.R. Doc. 23); *Non-Malleable Cast Iron Pipe*

*Fittings from China: Ductile Iron Lap Joint Flanges, Scope Request* (Jan. 27, 2020) (Rem. P.R.

Doc. 27).

   Commerce submitted the First Remand Redetermination on April 3, 2020, in

which it concluded that Crane's flanges were within the scope of the Order.  *First*

*Remand Redetermination* 4–14.  Crane and Anvil filed comments in response to the First

Remand Redetermination.  Pl. MCC Holdings dba Crane Resistoflex's Comments on

Commerce's Final Remand Redetermination (May 27, 2020), ECF No. 43 ("Crane's

Comments"); Def.-Int.'s Comments in Support of the Final Remand Redetermination

(Aug. 5, 2020), ECF No. 48 ("Anvil's Comments"). Defendant responded to Crane's

comments on August 7, 2020. Def.'s Resp. to Pl.'s Comments on Commerce's Remand

Redetermination (Aug. 7, 2020), ECF No. 49 ("Def.'s Resp.").

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

The court exercises subject matter jurisdiction pursuant to section 201 of the

Customs Courts Act of 1980, 28 U.S.C. § 1581(c), which grants this Court jurisdiction

over civil actions brought under section 516A of the Tariff Act of 1930, 19 U.S.C.

§ 1516a(a)(2)(B)(vi).[2] In reviewing a contested scope ruling, the court will uphold the

Department's determinations, findings, and conclusions unless they are "unsupported

by substantial evidence on the record, or otherwise not in accordance with law."

19 U.S.C. § 1516a(b)(1)(B)(i).

### B. Interpretation of Scope Language in an Antidumping Duty Order

The Department's regulation governing scope determinations, 19 C.F.R.

§ 351.225(k), provides that Commerce "will take into account the following: (1) The

descriptions of the merchandise contained in the petition, the initial investigation, and

---

[2] All statutory citations herein are to the 2012 edition of the United States Code and all regulatory citations herein are to the 2020 edition of the Code of Federal Regulations.

the determinations of the Secretary [of Commerce] (including prior scope

determinations) and the [United States International Trade] Commission." 19 C.F.R.

§ 351.225(k)(1). If this inquiry fails to resolve the issue, Commerce applies additional

criteria. *Id.* § 351.225(k)(2).

The Department's regulation is not properly interpreted as identifying the *only*

factors Commerce is to consider, or may consider, in acting on a scope ruling request.

Commerce must, of course, analyze the scope language of the relevant antidumping or

countervailing duty order. *Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1302

(Fed. Cir. 2013). The Department's role in issuing a scope ruling is to interpret, not

modify, the scope language. *Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1095 (Fed.

Cir. 2002) ("Commerce cannot interpret an antidumping order so as to change the scope

of that order, nor can Commerce interpret an order in a manner contrary to its terms."

(internal quotation marks and citation omitted)). Moreover, to be sustained upon

judicial review, a scope ruling must be supported by the record evidence considered as

a whole. As a practical matter, this must include consideration of the record

information contained in the scope ruling request, which ordinarily will include, *inter*

*alia*, "[a] detailed description of the product, including its technical characteristics and

uses." 19 C.F.R. § 351.225(c)(1)(i).

### C. Crane's Flanges as Described in the Scope Ruling Request

Crane's Scope Ruling Request sought a ruling on nine models of "Ductile Iron Lap Joint Flanges" ("Crane's flanges"). *Scope Ruling Request* 1; *see also Final Scope Ruling* 1–2. Each model is a single disc-shaped article made of ductile iron with a large, unthreaded center hole. *Scope Ruling Request* Ex. 1. Surrounding the center hole are smaller, equally spaced, unthreaded holes that are present to accommodate bolts used in assembling a joint between the ends of two plastic-lined pipes. *Id.* at 1, 3, Ex. 1. The pipes joined by Crane's flanges are used in the United States in assemblies of "process piping primarily for the chemical process industry." *Id.* at 1.

The Scope Ruling Request describes an assembled joint (the "lap joint") as consisting of two mating flanges, a gasket placed between the flanges, and a set of bolts and nuts that are used as the means of clamping the two flanges together. *Id.* at 2. The Scope Ruling Request describes the lap joint assembly as follows:

> The subject Flanges transmit the clamping force of the bolts to independent gaskets that are the sealing surface to the pipe end. This type of subject Flange (lap joint) is unique from all other types of standard flange types because it rotates loosely around the pipe behind a "lap", which is a portion of the pipe which is flared outward. Two mating laps, with the addition of a gasket (a shaped piece or ring of rubber or other material sealing the junction between two surfaces of the pipe) are clamped by the bolts between the two subject Flanges.

*Id.* The Scope Ruling Request adds that "[t]here is no pipe fitting attached to the subject Flanges." *Id.* The Flanges are described by industry standard ASME B16.42. *Id.* at 3.

### D. The Court's Prior Order and *Star Pipe I*

The *Star Pipe* litigation, which is ongoing, presents the issue of whether the scope of the Order includes certain ductile iron flanges that featured, instead of a lap joint system, threaded center holes to accommodate attachment to threaded pipe ends. *Star Pipe I*, 43 CIT at __, 365 F. Supp. 3d at 1279. *Star Pipe I* held that Commerce, in ruling that Star Pipe's flanges were within the scope of the Order, did not comply with its regulation, 19 C.F.R. § 351.225(k)(1), because it failed to consider, as the regulation requires, the merchandise descriptions in the Petition. *Id.* at __, 365 F. Supp. 3d at 1282. The court also ruled that Commerce did not address relevant portions of the document setting forth the affirmative threat determination of the ITC. *Id.* at __, 365 F. Supp. 3d at 1283–86. *Star Pipe I* held that the scope ruling at issue in that case, not being based on an analysis consistent with the Department's regulations and on substantial record evidence, was contrary to law. *Id.* at __, 365 F. Supp. 3d at 1282.

### E. The Department's Decision in the Final Scope Ruling

The scope language of the Order describes as follows the merchandise that is within the scope:

> [F]inished and unfinished non-malleable cast iron pipe fittings with an inside diameter ranging from 1/4 inch to 6 inches, whether threaded or un-threaded, regardless of industry or proprietary specifications. The subject fittings include elbows, ells, tees, crosses, and reducers as well as flanged fittings. These pipe fittings are also known as "cast iron pipe fittings" or "gray iron pipe fittings." These cast iron pipe fittings are normally produced to ASTM A-126 and ASME B.16.4 specifications and are threaded to ASME B1.20.1 specifications. Most building codes require

that these products are Underwriters Laboratories (UL) certified.  The scope does not include cast iron soil pipe fittings or grooved fittings or grooved couplings.

Fittings that are made out of ductile iron that have the same physical characteristics as the gray or cast iron fittings subject to the scope above or which have the same physical characteristics and are produced to ASME B.16.3, ASME B.16.4, or ASTM A-395 specifications, threaded to ASME B1.20.1 specifications and UL certified, regardless of metallurgical differences between gray and ductile iron, are also included in the scope of this petition.  These ductile fittings do not include grooved fittings or grooved couplings.  Ductile cast iron fittings with mechanical joint ends (MJ), or push on ends (PO), or flanged ends and produced to the American Water Works Association (AWWA) specifications AWWA C110 or AWWA C153 are not included.

*Order*, 68 Fed. Reg. at 16,765.

Commerce determined that five of the nine models of Crane's flanges are described by the first sentence of the second paragraph of the Order, *First Remand Redetermination* 3–5, which Commerce interpreted to incorporate the physical characteristics listed in the first sentence of the first paragraph, *id.* at 5, specifically, an inside diameter ranging from one-fourth inch to six inches, whether threaded or unthreaded.  Commerce found, and plaintiff does not dispute, that the flanges have unthreaded inside diameters and that the inside diameters of five of the models were within the size range—one-fourth inch to six inches—specified in the first paragraph.[3]

---

[3] The five models Commerce found to be in-scope had inside diameters, in inches, of 1.938, 1.985, 2.46, 3.6, and 4.615; the inside diameters of the models Commerce found to be outside the scope had inside diameters, in inches, of 6.75, 8.75, 10.92, and (continued . . .)

*Id.* On that basis, Commerce concluded that Crane's flanges have the same physical

characteristics as the gray iron fittings subject to the first paragraph of the Order. *Id.* at

4–5. Commerce then concluded that Crane's flanges are "pipe fittings" within the

meaning of that term as used in the scope language. *Id.* at 13–14. Commerce relied for

its conclusion on the three sources of information listed in 19 C.F.R. § 351.225(k)(1): the

Petition, the pertinent report of the ITC, and prior scope rulings. *Id.* at 6–14.[4]

### F. Commerce Did Not Consider All Relevant Evidence, and Reached Unsupported Conclusions, in Ruling that Crane's Flanges Are Within the Scope of the Order

### 1. The Petition

The First Remand Redetermination relies upon brochures of Anvil and Ward

Manufacturing, Inc. ("Ward"), included as exhibits to the Petition, to conclude that the

petitioners "intended to cover flanges in the scope of the *Order*." *First Remand*

---

(. . . continued)

12.92. *Non-Malleable Cast Iron Pipe Fittings from China: Ductile Iron Lap Joint Flanges, Scope Request [Supplement]* Ex. 2 (Sept. 17, 2018) (P.R. Doc. 13).

[4] Commerce also placed on the record for the First Remand Redetermination a publication by U.S. Customs and Border Protection, "What Every Member of the Trade Community Should Know About Classification and Marking of Pipe Fittings under Heading 7307." *First Remand Redetermination* 12. Commerce clarified in the First Remand Redetermination that it did not rely on this publication in reaching its conclusion. *Id.* The publication quotes the Explanatory Notes to the Harmonized Commodity Description and Coding System, EN 73.07, which includes "flanges" as an example of articles within the scope of international heading 7307 ("Tube or pipe fittings (for example couplings, elbows, sleeves), of iron or steel"*). Antidumping Duty Order on Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China: MCC Holdings dba Crane Resistoflex Scope Remand Redetermination* Attach. II at 7 (Jan. 17, 2020) (Rem. P.R. Docs. 18–21).

*Redetermination* 6.  The evidence in the brochures lends support to a finding that Anvil and Ward, who were producers of pipe fittings and the two petitioners in the investigation, considered flanges, in general, to be pipe fittings.  It is, therefore, probative on the question of whether the two petitioners intended that flanges would be included in the scope of the investigation that they proposed.  But it is not determinative on this point.  Neither the body of the Petition, nor the scope language of the Order that culminated from the investigation it launched, specifically addresses flanges.

In addition, certain language in the Petition can be interpreted to indicate that the petitioners meant for the proposed investigation to be limited to goods produced for two applications: fire prevention/sprinkler systems and steam conveyance systems.  The Petition proposed an investigation with a scope it described as follows:

> The scope of this petition covers finished and unfinished non-malleable cast iron pipe fittings (including ductile fittings) with an inside diameter ranging from 1/4 inch to 6 inches whether threaded or unthreaded, regardless of industry or proprietary specification, used in, or intended for use in, non-malleable cast iron pipe fittings applications described in subsection 2 below.

*Petition* 3.  "Subsection 2" stated, in pertinent part, that:

> Virtually all subject fittings are used in fire protection systems and in the steam heat conveyance systems used in old inner cities.  The fire protection/sprinkler market is by far the dominant use, accounting for approximately 90 percent of shipments.  The steam heating market represents another 5 percent of shipments, with other uses constituting less than 5 percent of shipments.

*Id*. at 4.  It is possible to interpret the term "applications described in subsection 2 below" as intended to encompass unnamed "other uses constituting less than 5 percent of shipments" as well as the named applications, i.e., fire protection sprinkler and steam heating systems, but this interpretation leads to an interpretive difficulty.  *Id.* at 3–4.  If the Petition is interpreted in that way, then the words "used in, or intended for use in" as they appear in the first paragraph do not limit the proposed scope of the investigation being sought and therefore can have no meaning.  *Id.* at 3.  This difficulty is avoided if the reference in the first paragraph to "applications described in subsection 2 below" is limited to applications that actually are *described* there, as opposed to merely referenced there.  *Id.*  At best, the Petition is ambiguous, the petitioners not having elaborated on the "other uses constituting less than 5 percent."  *Id.* at 4.

## 2. The ITC's Report of its Final Decision in the Antidumping Duty Investigation

Commerce relied in part on evidence in the ITC's report of its final affirmative determination of threat to the domestic industry (the "ITC Report").  Non-Malleable Cast Iron Pipe Fittings From China, Inv. No. 731-TA-990 (Final), USITC Pub. No. 3586 (Mar. 2003) (Rem. P.R. Docs. 18–21, Attach. IV) ("*ITC Report*").  The evidence in the ITC Report does not support the conclusions Commerce drew from it.

In the First Remand Redetermination, Commerce concluded that "[a]s an initial matter, although the ITC considered all flanged ductile cast iron fittings to be excluded from the scope, it did not exclude ductile iron *flanges* from the scope or the domestic like

product." *First Remand Redetermination* 8.  It concluded, further, that "Crane has

provided no evidence demonstrating that the ITC excluded flanges from its analysis in

its investigation." *Id.* at 9–10.  These conclusions are misleading and erroneous.  In

discussing the scope, the ITC did not identify flanges as within the scope of either its

investigation or the scope of its domestic like product.  Because it omits this critical

context, the statement that the ITC did not "exclude" flanges is misleading.  Moreover,

evidence in the ITC Report supports a reasonable inference that ductile iron flanges

were not within the scope of the ITC's injury and threat investigation.

> The ITC Report, in the section entitled Views of the Commission, stated as

follows:

> > Domestic producers did not report domestic production of ductile
> > flanged fittings that would otherwise correspond to merchandise within
> > the scope.  Accordingly, there is no data on domestic ductile flanged
> > fittings that could be included in any broadened like product analysis.
> > Any issue regarding possible broadening of the domestic like product to
> > include ductile flanged fittings is therefore moot.

*ITC Report* 7–8 (internal citation omitted).  As indicated in the quoted language, the ITC

declined to broaden the scope of the domestic like product to include flanged fittings

made of ductile iron.  At the same time, the ITC defined the scope of the domestic like

product as corresponding to the scope of its injury and threat investigation.  *Id.* at 8

("For the reasons stated above, we find the domestic like product to be non-malleable

and ductile cast iron pipe fittings corresponding to the scope.").  The First Remand

Redetermination concludes, in response, that "[w]e disagree with the ITC's

interpretation of the exclusionary language in the scope pertaining to ductile flanged

fittings because the ITC's interpretation is contradicted by the plain language of the

scope," referring to the scope exclusion for certain ductile cast iron fittings that conform

to specified AWWA standards, i.e., AWWA C110 and C153. *First Remand*

*Redetermination* 8 n.29. This conclusion misses the point. It overlooks the significance of

the ITC's discussion of its domestic like product and the scope of the ITC's

investigation. The ITC was aware of the specific exclusion Commerce provided for

certain AWWA-conforming goods, and the ITC expressed no disagreement with respect

to it. *See ITC Report* I-8–9. But apart from that, the ITC, based on its own investigation,

still determined that *all* ductile flanged fittings were outside the scope of the domestic

like product, and therefore also outside the scope of its own injury/threat investigation.

Noteworthy is evidence showing that ductile iron flanges share a defining physical

characteristic with ductile iron flanged fittings, i.e., a flange. It is also noteworthy that

the ITC Report does not discuss flanges (as opposed to flanged fittings) in describing

the merchandise it considered to be within the scope of its own investigation.

    The Department's regulation, 19 C.F.R. § 351.225(k)(1), required Commerce to

consider the ITC Report, and it may not do so in a way that disregards probative

evidence therein on the limits of the scope of the ITC investigation and like product. In

*Star Pipe I*, this Court identified this problem, questioning "how, if ductile iron flanged

*fittings* were excluded from the scope of the antidumping duty investigation, ductile

iron *flanges* nevertheless were intended to be treated as subject merchandise during that

investigation . . . . even though the ITC Report makes no mention of ductile iron flanges

(or non-malleable iron flanges, for that matter) and even though the ITC Report

presents a detailed discussion of the various types of merchandise that are within the

scope."  43 CIT at __, 365 F. Supp. 3d. at 1286.  The First Remand Redetermination errs

in misinterpreting the significance of the ITC's discussion of like product and scope and

in failing to address the negative implications it poses for the Department's ultimate

conclusion.  It is axiomatic that under the antidumping duty statute as it applies in this

case, Commerce may impose antidumping duties on a good only following a

determination by Commerce that the good is "unfairly traded," i.e., that it was the

subject of an affirmative less-than-fair-value determination by Commerce and also was

included within the goods investigated by the ITC and thereby found to have resulted

in material injury or the threat of material injury to the domestic industry.  *See* 19 U.S.C.

§ 1673.  By requiring Commerce to consider "the descriptions of the merchandise

contained in . . . the determinations of . . . the Commission," 19 C.F.R. § 351.225(k)(1),

when ruling on a scope issue, the Department's regulations embody this principle.

        The First Remand Redetermination states that "[t]he ITC report . . . defines a pipe

fitting as an iron casting 'generally used to connect the bores of two or more tubes,

connect a pipe to another apparatus, change the direction of fluid flow, or close a pipe.'"

*First Remand Redetermination* 8 (quoting *ITC Report* 4).  Commerce relied on this

language in concluding that flanges are "pipe fittings" within the meaning of the scope

language of the Order, but this conclusion is unwarranted by the record evidence in the

ITC Report.  *See id.* at 8–10.  The language in the ITC Report is not stated as a definition

of the term "pipe fitting" and instead is a general description of the uses of pipe fittings.

There is no indication in the text of the ITC Report that the ITC was addressing in the

quoted language the specific issue of whether a flange—a good it did not discuss—is,

generally speaking, a pipe fitting or whether the ITC considered flanges in general, or

ductile iron flanges in particular, to be within the scope of its own injury and threat

investigation.  Also, as the court has noted, the scope language did not change between

the Initiation Notice published by Commerce and the final scope language in the Order,

and the ITC Report occurred in the interim.

The First Remand Redetermination concludes, further, that "the ITC report also

specifically references certain types of flanges as being included within its definition of

a pipe fitting."  *Id.* at 9.  To support this finding, the First Remand Redetermination

relies upon "[a] footnote on page I-6 of the ITC Report" stating that "{a}nother use for

these {subject} non-malleable flanged fittings is as so-called floor flanges to affix pipes

as hand (or other) railings to floors or other surfaces."  *Id.* (quoting *ITC Report* I-6 n.28).

From this, the First Remand Redetermination concludes that "[c]learly, the ITC

considered at least one type of flange to be a type of pipe fitting."  *Id.*  Here also, the

Department's conclusions are unsupported by the evidence it cited.  The language in

the ITC Report's footnote refers expressly to a use of a flanged fitting, not a flange, and

it provides no support for a conclusion that the ITC considered flanges, which it did not

discuss, to be pipe fittings or a conclusion that they were within the scope of its own

investigation.

### 3. Prior Scope Rulings

The First Remand Redetermination relies upon three of the Department's prior

scope rulings: "The UV Ruling," "Napac Ruling," and "Taco Ruling."[5]  *Id.* at 11–13.  As

this Court ruled in *Star Pipe I*, neither the Taco Ruling nor the Napac Ruling supports a

determination that flanges are pipe fittings within the meaning of the Order.  *See* 43 CIT

at __, 365 F. Supp. 3d at 1285 n.8.

The Taco Ruling involved merchandise called "black and green ductile flanges,"

which Commerce determined were flanged fittings: "as fittings cast with an integral

rim, or flange, at the end of the fitting, Taco's black and green ductile flanges can

properly be classified as flanged fittings, as defined by the ITC."  *Taco Ruling* 9 (citing

*ITC Report* I-9).  The First Remand Redetermination states, "[w]e continue to rely on the

---

[5] *See Final Scope Ruling on the Antidumping Duty Order on Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China: Request by U.V. International LLC* (May 12, 2017) ("*UV Ruling*"); *see also Final Scope Ruling on the Antidumping Duty Order on Finished and Unfinished Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China: Request by Napac for Flanged Fittings* (Sept. 19, 2016) ("*Napac Ruling*"); *Final Scope Ruling on the Black Cast Iron Flange, Green Ductile Flange, and the Twin Tee* (Sept. 19, 2008) ("*Taco Ruling*"), appended to *Final Scope Ruling on the Antidumping Duty Order on Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China:  MCC Holdings dba Crane Resistoflex* (Nov. 19, 2018) (P.R. Doc. 16), as Attach. IV, V, and VII, respectively.

*Taco Ruling* for the proposition that Commerce has previously found some types of flanges to be included in the scope of the *Order*." *First Remand Redetermination* 11. This logic ignores the distinction Commerce made, in other sections of the First Remand Redetermination, that flanges and flanged fittings are different products. *See id.* at 8, 9. Because Commerce identified the good at issue in the *Taco Ruling* as a "flanged fitting" rather than a flange, the *Taco Ruling* is not an evidentiary basis upon which Commerce validly could find that Crane's flanges are pipe fittings within the scope of the Order.

The relevant merchandise at issue in the *Napac Ruling* was "gray iron flanged fittings." *Id.* at 11. Commerce relied on the ruling for the proposition that Commerce "has previously found that ductile iron fittings are covered by the scope of the Order unless they meet AWWA C110 or AWWA C153 specifications." *Id.* at 11–12. Based on the descriptions of the product at issue in the *Napac Ruling*, the court is unable to conclude that any of those products resemble Crane's flanges. The Department's stated reasons for reliance on this ruling do not support a conclusion that the Order covers Crane's flanges. Further, the underlying premise is erroneous because not every ductile iron pipe fitting is within the scope of the Order even if not meeting AWWA C110 or C153 specifications. The Order includes "[f]ittings that are made out of ductile iron that have the same physical characteristics as the gray or cast iron fittings subject to the scope above." *Order*, 68 Fed. Reg. at 16,765. Also, the Order excludes ductile iron grooved fittings and couplings *in addition* to products that meet the two specifications

above.  *Id.*  Without further specification as to the characteristics of the products in the

*Napac Ruling*, the ruling does not support a finding that Crane's flanges are within the

scope of the Order, or that all ductile iron fittings are covered by the Order unless they

meet either specification.

Commerce stated in the First Remand Redetermination that it "continue[s] to

rely on the *UV Ruling* for the proposition that Commerce has previously found that

some ductile iron flanges similar to Crane's flanges are within the scope of the *Order*."

*First Remand Redetermination* 12.  The *UV Ruling* appears to be on point, but the support

it provides is limited by an erroneous analysis.  The products at issue in the *UV Ruling*

were flat-faced ductile iron flanges.  *UV Ruling* 3.  The ruling states:

> In reviewing the product documentation submitted by U.V. International,
> the Department finds that U.V. International's flanges conform to the
> ITC's definition of pipe fittings.  Specifically, as demonstrated in U.V.
> International's original submission, its flanges can be threaded onto the
> ends of two pipes, and then those flanges can be bolted together so as to
> connect the pipes.  Alternatively, a flange may be threaded onto one pipe
> and then used to connect that pipe to an apparatus with a compatible
> connector. Moreover, the Department has found that flanges are fittings in
> both the Taco and Napac scope rulings.

*Id.* at 8.  This excerpt demonstrates the same reliance on the ITC Report's description of

"pipe fittings" that the court finds to be misguided.  The First Remand

Redetermination's strained interpretation of the ITC Report cautions against a

conclusion that the ITC considered ductile iron flanges to be within the scope of its

investigation.  The erroneous statement in the *UV Ruling* that Commerce found that

"flanges" are fittings in the *Taco* and *Napac* rulings is another reason to question the analysis therein.  Neither of those rulings was pertinent to the issue posed in this litigation.

### III.  CONCLUSION AND ORDER

The Department's regulation, 19 C.F.R. § 351.225(k)(1), instructs that Commerce will consider "[t]he descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary (including prior scope determinations) and the Commission," in deciding whether merchandise is within the scope of an order.  Commerce permissibly found certain evidentiary support for its determination in the Petition and in its past scope ruling, the *UV Ruling*, but concluded, contrary to record evidence, that certain other rulings supported its decision.

Overall, Commerce failed to base its First Remand Redetermination on findings supported by substantial evidence, when that record is considered on the whole.  Most notably, Commerce misinterpreted the evidence it cited from the ITC Report, evidence which does not support a determination that Crane's flanges are subject merchandise and failed to address evidence in the ITC Report detracting from the Department's ultimate conclusion, which was evidence that ductile iron flanged fittings were outside the scope of the ITC's investigation.

The court does not hold that Crane's flanges are, or are not, within the scope of the Order.  That is a determination for Commerce to make upon remand.  The court

holds instead that Commerce must reconsider its decision in light of the deficiencies the

court has identified. Therefore, upon consideration of the First Remand

Redetermination and all papers and proceedings herein, it is hereby

**ORDERED** that Commerce, within 90 days of the issuance of this Opinion and Order, shall submit a second decision upon remand ("Second Remand Redetermination") conforming to this Opinion and Order; it is further

**ORDERED** that plaintiff and defendant-intervenor shall have 30 days from the filing of the Second Remand Redetermination in which to submit comments to the court; and it is further

**ORDERED** that defendant shall have 15 days from the date of filing of the last comment on which to submit a response to the comments that have been submitted.

/s/ Timothy C. Stanceu
Timothy C. Stanceu, Judge

Dated: August 26, 2021
        New York, New York