A-570-875<br>
Remand Redetermination<br>
Slip Op. 21-109<br>
Scope Inquiry<br>

MCC Holdings dba Crane Resistoflex – Non-Malleable Cast Iron Pipe Fittings from China

**Public Document**<br>
E&C/Office IV:  MC

*MCC Holdings dba Crane Resistoflex v. United States and Anvil International, LLC*
**Court No. 18-00248, Slip Op. 21-109 (August 26, 2021)**

**FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT ORDER**

**I.     SUMMARY**

The U.S. Department of Commerce (Commerce) has prepared these final results of redetermination pursuant to the remand order of the U.S. Court of International Trade (the Court) in *Crane I*.[1]  These final remand results pertain to the scope inquiry submitted by MCC Holdings dba Crane Resistoflex (Crane)[2] regarding whether five of its ductile iron lap joint flanges (ductile iron flanges)[3] are pipe fittings covered by the antidumping duty (AD) order on non-malleable cast iron pipe fittings (pipe fittings) from the People's Republic of China (China).[4]

In *Crane I*, the Court found that Commerce's first remand redetermination,[5] where Commerce found that Crane's flanges are pipe fittings within the scope of the *Order*, was not supported by substantial record evidence.[6]  Specifically, the Court held that certain of

---

[1] *See MCC Holdings dba Crane Resistoflex v. United States and Anvil, LLC*, Court No. 18-00248, Slip Op. 21-109 (August 26, 2021) (*Crane I*).
[2] *See* Crane's Letter, "Non-Malleable Cast Iron Pipe Fittings from China:  Ductile Iron Lap Joint Flanges, Scope Request," dated August 29, 2018.
[3] *See Crane I* at 11.
[4] *See Notice of Antidumping Duty Order:  Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China*, 68 FR 16765 (April 7, 2003) (*Order*).
[5] *See Final Results of Redetermination Pursuant to Court Remand, MCC Holdings dba Crane Resistoflex v. United States*, Court No. 18-00248, Slip Op. 21-109 (CIT January 7, 2020), dated April 2, 2020) (*Crane I Final Redetermination*), available at https://access.trade.gov/resources/remands/18-00248.pdf .
[6] *See Crane I* at 22.

Commerce's findings related to the scope language, past scope rulings, the Petition[7], and the International Trade Commission (ITC) Report[8] are not supported by substantial evidence, and that Commerce failed to address, or address in any meaningful way, certain evidence on the record that detracts from Commerce's determination that Crane's ductile iron flanges were covered by the scope of the *Order*.[9] Accordingly, the Court ordered Commerce to issue a second decision upon remand, consistent with the Court's opinion, as described further below.

## II.     ANALYSIS

### 1. Scope of the *Order*

The scope of the *Order* is as follows:

> The products covered by this *Order* are finished and unfinished nonmalleable cast iron pipe fittings with an inside diameter ranging from 1/4 inch to 6 inches, whether threaded or unthreaded, regardless of industry or proprietary specifications. The subject fittings include elbows, ells, tees, crosses, and reducers as well as flanged fittings. These pipe fittings are also known as "cast iron pipe fittings" or "gray iron pipe fittings." These cast iron pipe fittings are normally produced to ASTM A-126 and ASME B.16.4 specifications and are threaded to ASME B1.20.1 specifications. Most building codes require that these products are Underwriters Laboratories (UL) certified. The scope does not include cast iron soil pipe fittings or grooved fittings or grooved couplings.
>
> Fittings that are made out of ductile iron that have the same physical characteristics as the gray or cast iron fittings subject to the scope above or which have the same physical characteristics and are produced to ASME B.16.3, ASME B.16.4, or ASTM A-395 specifications, threaded to ASME B1.20.1 specifications and UL certified, regardless of metallurgical differences between gray and ductile iron, are also included in the scope of this *Order*. These ductile fittings do not include grooved fittings or grooved couplings. Ductile cast iron fittings with mechanical joint ends (MJ), or push on ends (PO), or flanged ends and produced to American Water Works Association (AWWA) specifications AWWA C110 or AWWA C153 are not included.

---

[7] *See* Petitioners' Letter, "Petition for Imposition of Antidumping Duties: Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China," dated February 21, 2002 (Petition).
[8] *See Non-Malleable Cast Iron Pipe Fittings from China*, Investigation No. 731-TA-990 (Final), USITC Pub. No. 3586, 2003 (ITC Report).
[9] *Id*.

> Imports of covered merchandise are classifiable in the Harmonized Tariff Schedule of the United States (HTSUS) under item numbers 7307.11.00.30, 7307.11.00.60, 7307.19.30.60 and 7307.19.30.85.  HTSUS subheadings are provided for convenience and customs purposes.  The written description of the scope of the *Order* is dispositive.

Commerce determined in the Crane Scope Ruling that Crane's ductile iron flanges are described by the first sentence of the second paragraph of the scope, because they incorporate the same physical characteristics as "{f}ittings that are made out of ductile iron that have the same physical characteristics as the gray or cast iron fittings subject to the scope above or which have the same physical characteristics and are produced to ASME B.16.3, ASME B.16.4, or ASTM A-395 specifications, threaded to ASME B1.20.1 specifications and UL certified."[10]  For each of the five flanges subject to this remand proceeding, the inside diameters are between ¼ inch and 6 inches.[11]  In addition, Crane's ductile iron flanges are unthreaded.[12]  Accordingly, since the first paragraph of the *Order* covers pipe fittings with an inside diameter ranging from ¼ inch to six inches, whether threaded or unthreaded, and Crane's threaded flanges are within this diameter range, Commerce determined that Crane's flanges had the same physical characteristics as those subject to the first paragraph of the scope.[13]

The Court in *Crane I* held that evidence in the Petition "lends support to a finding" that flanges could, in general, be considered pipe fittings.[14]  However, the Court also observed that flanges are not referenced in the scope language of the *Order* or the Petition,[15] whereas the Court found that the ITC Report contains "evidence showing that ductile iron flanges share a defining physical characteristic with ductile iron flanged fittings.[16]

---

[10] *See Crane I* at 11.
[11] *See Crane I* at 11.
[12] *Id*.
[13] *Id*. at 11-12.
[14] *Id*. at 13.
[15] *Id*.
[16] *Id*. at 16.

Although the narrative of the Petition, like the language of the scope of the *Order*, does not mention flanges, we note that product catalogues from Anvil International LLC (Anvil) and Ward Manufacturing Inc., the petitioners in the investigation, include information to demonstrate that the petitioners "intended to cover flanges in the scope of the *Order*"[17] and both referenced flanges as a type of pipe fitting in several instances in the Petition.[18]

We continue to find that Crane's flanges are pipe fittings that have the same physical characteristics as those fittings described in the first paragraph of the scope, the language of which is controlling. However, in accordance with the Court's opinion, we have further examined the sources under 19 CFR 351.225(k)(1), as discussed below.

### 2. Ductile Iron Flanged Fittings and Flanges

The Court raised concerns with several of Commerce's findings with respect to the ITC Report, concluding that "the evidence in the ITC Report does not support the conclusions Commerce drew from it."[19] Specifically, the Court finds that the ITC defined the domestic like product as corresponding to the scope of its investigation and, at the same time, declined to broaden the domestic like product to include any ductile flanged fittings.[20] The Court held that the ITC also "determined that *all* ductile flanged fittings were outside of the scope of the domestic like product, and therefore also outside the scope of its own injury/threat investigation."[21] In view of this finding, the Court noted that, pursuant to section 731 of the

---

[17] *See Crane I* at 12.
[18] *See* Petitioners' Letter, "Petition for Imposition of Antidumping Duties: Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China," dated February 21, 2002 (Petition) at Exhibit 2. For example, in *Star Pipe II*, the Court observed that the Anvil pipe fittings product catalogue in the Petition "depicts a 'flange union gasket type' appearing to be similar to the flanges under consideration …{and} a 'floor flange' that resembles one of Star Pipe's flanges." *See Star Pipe Products v. United States and Anvil International*, 463 F. Supp. 3d 1366 (2020) Court No. 17-00236, Slip Op. 20-114 (August 11, 2020) (*Star Pipe II*) at 8.
[19] *See Crane I* at 14.
[20] *Id*. at 15.
[21] *Id.* at 16 (emphasis in original).

Tariff Act of 1930, as amended, Commerce may impose antidumping duties only on those goods it determines are unfairly traded.[22]

The Court held that Commerce failed to analyze the ITC Report's discussion of the possible exclusion for ductile iron flanged fittings and its relationship to ductile iron flanges.[23] We respectfully disagree that Commerce did not address this evidence. In the first remand redetermination, we evaluated the evidence in the ITC Report along with the other sources under 19 CFR 351.225(k)(1) in discussing that flanges and flanged fittings are separate and distinct products.[24] As explained in the *Crane I Final Redetermination*, we evaluated evidence in the ITC Report that, according to the Court's order in *Crane I*, would detract from our finding that flanges are covered by the *Order*, and weighed that evidence with other record information, including the Petition.[25] In any event, because the Court has held that "evidence in the ITC Report supports a reasonable inference that ductile iron flanges were not within the scope of the ITC's injury and threat investigation,"[26] under respectful protest, were are implementing the Court's findings.

### 3. Prior Scope Proceedings

The Court found Commerce's reliance on previous scope rulings to demonstrate that flanges are pipe fittings within the meaning of the *Order* was unsupported by record evidence. In particular, the Court found that the proposition that Commerce "has previously found that ductile iron fittings are covered by the scope of the Order unless they meet AWWA C110 or AWWA C153 specifications"[27] to be lacking an evidentiary basis. The Court found that none of

---

[22] *Id.* at 17.
[23] *Id.* at 18-19.
[24] *See Crane I Final Redetermination* at 8-10.
[25] *Id.* at 8-30.
[26] *See Crane I* at 15.
[27] *Id.* at 20.

5

the products at issue in the prior scope rulings resembled Crane's flanges and that Commerce's reliance on prior scope rulings for the purpose of inclusion does not support a conclusion that the *Order* covers Crane's flanges.[28] Moreover, the Court found Commerce's reliance on, and interpretation of, these prior scope rulings made it question Commerce's overall analysis that ductile iron flanges are covered by the *Order*.[29] Therefore, given the Court's opinion regarding Commerce's reliance on these prior scope rulings, under respectful protest, we are no longer relying on arguments made in the *Crane I Final Redetermination* on this issue to support our determination as to Crane's flanges.

### III.     FINAL RESULTS OF REDETERMINATION

As described above, we found that Crane's flanges are pipe fittings that have the same physical characteristics as pipe fittings subject to the scope of the *Order*. However, we accepted, under respectful protest, the Court's findings regarding lack of evidentiary support in the scope language, Petition, ITC report and prior scope determinations for Commerce's finding that Crane's flanges are within the scope of the *Order*. Therefore, based on the above analysis, we concluded that the five ductile iron flanges subject to first remand redetermination are outside the scope of the *Order*.

Pursuant to 19 CFR 351.225(k)(1), we found that Commerce must take into account the following factors when conducting a scope ruling under this provision: "{t}he descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary {of Commerce} (including prior scope determinations) and the {U.S. International Trade} Commission."[30] In this proceeding, pursuant to the Court's order, Commerce has further

---

[28] *Id.*
[29] *Id.* at 21-22.
[30] *See* 19 CFR 351.225(k)(1).

6

elaborated on descriptions of the merchandise contained in the scope, the Petition, and the ITC's determination in its investigation. These materials, along with other information from the investigation, Crane's scope request, and the Court's holdings are dispositive as to whether Crane's five ductile iron flanges, that are the subject of the first remand redetermination, are pipe fittings subject to the *Order*. Accordingly, we find it unnecessary to conduct an analysis under 19 CFR 351.225(k)(2). We received comments from the petitioner[31] and Crane[32] on November 30, 2021.

## IV.     COMMENTS ON DRAFT RESULTS OF REDETERMINATION

On November 18, 2021, Commerce issued its draft results of redetermination and provided interested parties an opportunity to comment on the *Draft Results*.[33] Commerce received comments from the petitioner[34] and Crane.[35] These comments are addressed below. After considering the petitioner's and Crane's comments, we have not made any changes to our conclusion in the *Draft Results* in these final results of redetermination.

**Issue 1:   Whether the Plain Language of the Scope Should Be Used to Solely Determine Scope Coverage for Crane's Flanges**

**Petitioner's Comments:** The petitioner argues that Commerce's conclusion in the *Draft Results,* that "Crane's flanges are pipe fittings that have the same physical characteristics as those described in the first paragraph of the scope," is correct.[36] However, the petitioner contends that Commerce's ultimate decision to find Crane's flanges out-of-scope in the *Draft*

---

[31] *See* ASC Engineered Solutions, LLC's Letter (formerly Anvil International, LLC) (the petitioner), "Non-Malleable Cast Iron Pipe Fittings from the People's Republic Of China/Comments On Draft Results Of Second Redetermination," dated November 29, 2021 (Petitioner Comments).
[32] *See* Letter from Crane Regarding "Crane – Non-Malleable Pipe Fittings from China – Scope," dated November 30, 2021 (Crane Comments).
[33] *See* Draft Results of Redetermination, MCC Holdings dba Crane Resistoflex v. United States and Anvil International, LLC, Court No. 18-00248, Slip Op. 21-109, datedAugust 26, 2021 (*Draft Results*).
[34] *See* Petitioner Comments.
[35] *See* Crane Comments.
[36] *See* Petitioner Comments at 1.

*Remand* violates the framework established by the Federal Circuit[37] for evaluating scope issues.[38] Specifically, according to this framework, the petitioner argues that the plain language of the scope is controlling and should be determinative of whether Crane's flanges are in-scope.[39] However, the petitioner contends that in the *Draft Results*, and under protest, Commerce found Crane's flanges to be out-of-scope based on the Court's misinterpretation of language in the ITC report that ductile iron flanged fittings were excluded from the domestic like product.[40] The petitioner argues that there is no direct statement from the ITC that all flanged fittings are out-of-scope.[41] The petitioner argues that the Court and Commerce's interpretation of the ITC report contradict the framework established by the Federal Circuit that the plain language of the scope should be determinative of coverage.[42] In addition, the petitioner argues that flanged fittings and flanges are different items so it does not follow that Crane's flanges are not covered by the scope simply because the ITC indicated that flanged fittings are not covered by Crane's scope.[43] Therefore, for the final remand redetermination, given the ambiguity of the ITC report, rather than adopt the Court's scope interpretation under protest, the petitioner argues that Commerce should explain why certain statements in the ITC Report are consistent with the fact that some flanges are covered by the scope and find Crane's flanges to be in-scope.

**Crane's Comments:** Crane agrees with Commerce's finding that its flanges are not in-scope.[44] However, Crane takes exception to Commerce's statement, in the *Draft Results*, that Crane's flanges are fittings according to the plain language of the scope.[45] Crane argues that

---

[37] Court of Appeals for the Federal Circuit (Federal Circuit).
[38] *Id.* at 2
[39] *Id.*
[40] *Id.* at 3.
[41] *Id.* at 5.
[42] *Id.* at 3.
[43] *Id.* at 5.
[44] *See* Crane Comments at 1.
[45] *Id.* at 3.

meeting dimensional criteria, as stated in the first sentence of the scope, is not a sufficient basis to find that Crane's flanges are in-scope.[46]  Further, Crane disagrees that any language in the ITC Report indicates that ductile iron flanges share a defining physical characteristic with ductile iron flanged fittings.[47]  Crane argues that Commerce does not offer any explanation regarding this claim in the *Draft Results*, nor does Commerce even discuss why any apparent physical similarities between ductile iron flanges and ductile iron fittings would determine scope coverage of the *Order*.[48]

**Commerce's Position**:   As explained above, we agree with the petitioner's argument that the plain language of the scope covers Crane's flanges.  Commerce also explained this point, as well as various other justifications supporting a finding that the products were in scope, thoroughly in the Scope Ruling and the *Crane I Final Redetermination*.  For these final results of redetermination, we continue to find that Crane's flanges are covered by the plain language of the scope, despite Crane's argument of the insufficiency of finding scope coverage based solely on dimensional criteria.  In addition, we also note that in the Scope Ruling, *Crane I Final Redetermination* and the *Draft Results*, Commerce's determination regarding scope coverage was based on more than dimensional criteria.  Specifically, Crane's flanges also meet the criterion of being unthreaded.  However, in *Crane I*, the Court found that the plain scope language was insufficient to determine coverage given information in the ITC Report that it found to be pertinent.  Specifically, and despite Commerce's addressing of this issue in the *Crane I Final Redetermination*, the Court held that "evidence in the ITC Report supports a reasonable inference that ductile iron flanges were not within the scope of the ITC's injury and

---

[46] *Id.*
[47] *Id.*
[48] *Id.*

threat investigation."[49]  While the petitioner argues that the Court misinterpreted the ITC's report, and Crane argues that there is no language in the ITC Report to show physical similarities between pipe fittings and flanges, Commerce is not in a position to assume what the Court meant or to dismiss what the Court has held.  We can only move forward based on the directive of the Court and, in this case, the Court held the "evidence in the ITC Report supports a reasonable inference that ductile iron flanges were not within the scope of the ITC's injury and threat investigation."[50]  Therefore, for these final results of redetermination, based upon the Court's findings in *Crane I,* we are finding, under respectful protest, that Crane's flanges are not in-scope.

**Issue 2:      Whether Commerce Provided Evidence to Support Its Decision to Respectfully Protest the Court's Decision in Crane I**

**Crane's Comment:**  Crane states that outside of finding Crane's flanges to be out-of-scope under protest, Commerce has not provided any analysis or substantial evidence to describe its reason for respectfully protesting the Court's decision.[51]  Crane notes that the only evidence cited by Commerce is the petitioner's product catalogues which contain information regarding flanges.[52]  However, Crane argues that these product catalogues were not included in the Petition that led to the *Order* or the investigation.[53]  Crane contends that the product catalogues were first submitted by the petitioner during this remand proceeding and created and dated well after the original investigation.[54]  Crane states that "the fact that Petitioner, after the fact, revised its product catalogue that now allegedly covers some flanges, if anything supports that the flanges

---

[49] *See Crane I* at 15.
[50] *Id*.
[51] *Id.* at 2.
[52] *Id*.
[53] *Id*.
[54] *Id*.

10

were not within the scope of the original investigation at the time of the investigation, nor intended to be."[55] In addition, Crane contends that by "Commerce's insistence on relying on product catalogues to determine the scope of an Order, the scope of all antidumping petitions would cover all products in the petitioner company's product catalogues, as petitioner writes it, which is not Commerce practice."[56] Therefore, Crane argues that these product catalogues should not be a part of the record of this scope proceeding and should not be used to "justify the conclusion that Petitioner originally intended the fittings Order to cover flanges."[57]

Other than these aforementioned arguments, Crane states that it has nothing to "answer" regarding Commerce's conclusions in the draft remand results because Commerce fails to explain why the Court is wrong and fails to explain it reasons for agreeing with the Court under protest.[58]

**Commerce's Position:**  We disagree with Crane.  First, in the *Draft Results*, we stated that we were respectfully protesting the Court's findings because we believe that the plain language of the scope is sufficient to determine that Crane's flanges are in-scope.  Second, in *Crane I,* the Court held that Commerce failed to analyze the ITC Report's discussion of the possible exclusion for ductile iron flanged fittings and its relationship to ductile iron flanges.[59]  In the *Draft Results*, we stated that we respectfully disagreed with the Court that Commerce did not address this evidence and pointed to our analysis of this issue in the *Crane I Final Redetermination*.  However, given that the Court was not swayed by our analysis in the *Crane I Final Redetermination*, and given that, in *Crane I*, the Court found an inference that flanges were

---

[55] *Id.*
[56] *Id.*
[57] *Id.*
[58] *Id.* at 3-4.
[59] *Id.* at 18-19.

not within the scope of the ITC's investigation, we explained, in the *Draft Results,* that we were accepting the Court's findings under respectful protest.

Next, Crane alleges that the product catalogues were created and added to the record only at the remand stage of this proceeding, and that they did not exist as attachments to the original Petition. This is incorrect. These product catalogues were included as an attachment to the Petition and were filed along with the Petition.[60] Therefore, these product catalogues were properly considered by Commerce as record evidence that could be used to determine scope coverage as information contained within the Petition. Further, Crane has offered no evidence for its statement that the petitioner altered the product catalogues, during the remand proceeding, to include flanges.[61] The product catalogues that were placed on the record of this remand proceeding are the same product catalogues that were included as an attachment to the Petition.[62] Next, we disagree with Crane's argument that including product catalogues in a petition would lead Commerce to find that the scope of an antidumping order covers all products in the catalogue. Under 19 CFR 351.225(k)(1), Commerce may properly examine information contained in a petition (including information contained in attachments) to aid in making a scope ruling. Therefore, we find that it was proper for Commerce to analyze the product information contained in the product catalogues provided in the Petition.

## V.   CONCLUSION

---

[60] *See* Petition at Exhibit 2.
[61] *See generally* Crane Comments.
[62] *See* Petition at Exhibit 2.   The cover sheet of the Petition and Exhibit 2 of the Petition were also placed on the record of the underlying scope proceeding with a date   *See* Petition at Exhibit 2; *see also* "Antidumping Duty Order on Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China: MCC Holdings dba Crane Resistoflex Scope Remand Redetermination, dated January 17, 2020, at Attachments 1 and 2 (Attachments 1 and 2 contain the cover sheet of the Petition and Exhibit 2, respectively, with a date stamp on the cover sheet establishing that the Petition and related Exhibit 2 were filed with Commerce on February 21, 2002.

Based on the above analysis, Commerce continues to find Crane's ductile iron flanges to be outside the scope of the AD order on pipe fittings from China. Should the Court affirm these Final Results of Redetermination, Commerce will issue a revised scope ruling accordingly.

12/20/2021

X _____

Signed by: RYAN MAJERUS

_____
Ryan Majerus
Deputy Assistant Secretary
　for Policy and Negotiations,
　performing the non-exclusive functions and duties of the
　Assistant Secretary for Enforcement and Compliance