UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE TIMOTHY C. STANCEU, SENIOR JUDGE

| | |
|---|---|
| MCC HOLDINGS, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> ASC ENGINEERED SOLUTIONS, LLC, <br><br> Defendant-Intervenor. | Court No. 18-00248 |

**DEFENDANT-INTERVENOR'S COMMENTS ON
THE FINAL RESULTS OF REMAND REDETERMINATION**

Defendant-Intervenor ASC Engineered Solutions, LLC (formerly Anvil International, LLC) ("ASC") provides these comments in opposition to the Department of Commerce's December 21, 2021 Final Results of Remand Redetermination (the "*Second Redetermination*") (ECF No. 58). In the *Second Redetermination*, Commerce held, under respectful protest, that Plaintiff's flanges are outside the scope of the relevant antidumping order. For the reasons explained below, the *Second Redetermination* is unsupported by substantial record evidence and is otherwise not in accordance with law.

**I.   COMMERCE ERRED IN FINDING THAT THE COURT DIRECTED A PARTICULAR RESULT**

Although Commerce agreed with ASC that "the plain language of the scope covers Crane's flanges," *Second Redetermination* at 9, it felt compelled to exclude those flanges, under

1

respectful protest, because this Court previously stated that "evidence in the ITC Report supports a reasonable inference that ductile iron flanges were not within the scope of the ITC's injury and threat investigation."  *Id*. at 9-10, citing *MCC Holdings v. United States*, Slip Op. 2021-109 (CIT Aug. 26, 2021) at 15 ("*MCC*").  This Court, however, did not compel Commerce to find that the flanges are out-of-scope.  *See MCC* at 22 ("The court does not hold that Crane's flanges are, or are not, within the scope of the Order.  That is a determination for Commerce to make upon remand").  Instead, the Court merely directed Commerce to "reconsider its decision in light of the deficiencies the court has identified," such as certain language in the ITC report.  *Id*. at 23.  Commerce did not, however, conduct such reconsideration addressing the specific areas of concern highlighted by *MCC*.  Rather, the redetermination simply assumes, incorrectly, that a particular result had been directed by the Court.  Consequently, the *Second Redetermination* is unsupported by substantial evidence and is not in accordance with law.

### II.     COMMERCE ERRED IN PERMITTING "(K)(1)" MATERIALS TO DISPLACE THE PLAIN MEANING OF THE SCOPE

The *Second Redetermination* violates the established framework set forth by the Federal Circuit for evaluating scope issues.  As the Appeals Court has explained,

> The first step in a scope ruling proceeding is to determine whether the governing language is in fact ambiguous.  If it is not ambiguous, the plain meaning of the language governs.  But if the language is ambiguous, Commerce must next consider the regulatory history, as contained in the so-called "(k)(1) materials."  If the (k)(1) materials are not dispositive, Commerce then considers the (k)(2) criteria.

*OMG, Inc. v. United States*, 972 F.3d 1358, 1363 (Fed. Cir. 2020) (internal citations omitted).  In this case, Commerce agreed that Crane's flanges clearly fall within the plain language of the scope.  *Second Redetermination* 4, 9.  There being no ambiguity, that should have been the end

of the matter; there was no justification to consider the "(k)(1)" materials.[1]  Statements in the ITC report, which fall within 19 C.F.R. § 351.225(k)(1), simply should not have been interpreted and then used to displace the plain meaning of the scope language.

The interpretation that Commerce understood to be the Court's conclusion and that Commerce adopted (without analysis) under protest is that *all* ductile iron flanged fittings are outside the scope.  *See Second Redetermination* at 4-5.  But this interpretation contradicts the plain meaning of the scope language.  In relevant part, the first paragraph of the scope encompasses cast iron fittings, which "include elbows, ells, tees, crosses, and reducers *as well as flanged fittings*." *Second Redetermination* at 2 (emphasis added).  The second paragraph encompasses "ductile iron" fittings that "have the same physical characteristics" as those in the first paragraph – which necessarily would include *flanged fittings made from ductile iron*. *Id*.  As confirmation of that point, the second paragraph then explicitly excludes "ductile iron fittings with … flanged ends and produced to American Water Works Association (AWWA) specifications AWWA C110 or AWWA C153." *Id*.  The exclusion of a *subset* of ductile iron flanged fittings (*i.e.*, those made to certain waterworks specifications) necessarily means that the general category is covered merchandise.  After all, "express exclusions would be superfluous" if the category of merchandise to which the exclusions applied were not included in the scope. *DynaEnergetics U.S. Inc. v. United States*, 298 F. Supp. 3d 1363, 1373 (CIT 2018).  The interpretation that *all* ductile flanged fittings are excluded simply cannot be reconciled with the scope language, and hence that interpretation is not tenable.  Because the plain language of the

---

[1] The applicable regulation at 19 C.F.R. § 351.225 was amended, effective for scope applications filed on or after November 4, 2021. *See Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws; Final Rule*, 86 Fed. Reg. 52300, 52327 (Sep. 20, 2021).  Because this scope inquiry was filed in 2018, the new amendments do not apply.

scope encompasses ductile iron flanged fittings, statements in the ITC report or other "(k)(1)" sources should not have been construed so as to exclude those products. The *Second Redetermination* thus is not in accordance with law.

### III.   COMMERCE ERRED IN FINDING THAT IT LACKED DISCRETION TO INTERPRET THE ITC REPORT

The ITC report does not necessarily contradict Commerce's finding regarding the plain meaning of the scope. ASC respectfully submits that this Court may have misconstrued the key discussion in the ITC report, which stated as follows:

> Domestic producers did not report domestic production of ductile flanged fittings that would otherwise correspond to merchandise within the scope. Accordingly, there is no data on domestic ductile flanged fittings that could be included in any broadened like product analysis. Any issue regarding possible broadening of the domestic like product to include ductile flanged fittings is therefore moot.

*MCC*, Slip Op. 2021-109 at 15, citing the ITC Report, Pub. No. 3586, at 7-8. According to the Court, this passage indicates the Commission excluded ductile iron flanged fittings from the domestic like product, rendering it unfair to apply duties to imports impacting that industry. *Id*. at 15-17. But, respectfully, the Court misapprehended the cited language.

A careful reading of the first sentence in the block quote indicates that the Commission itself believed the scope actually covered ductile iron flanged fittings. The Commission stated that, if there had been reported production of these products, it would "otherwise correspond to merchandise within the scope." In other words, if a member of the industry had made ductile flanged fittings during the investigation period, this would have constituted production of merchandise within the scope. Moreover, by then stating that the domestic like product issue was "moot," the Commission was, in effect, simply noting that it would not need to include data for this product in its analysis of the domestic industry's condition because there was no such

4

reported data to include.[2]  Admittedly, in the last sentence of the block quote, the Commission referred to potentially "broadening" the domestic like product to include ductile flanged fittings.  If the word "broadening" had been intended to mean "expanding the domestic like product beyond the scope," it would contradict the Commission's acknowledgement in the first sentence that ductile flanged fittings "correspond to merchandise within the scope."  The Commission's statement on "broadening" the domestic like product is confusing and perhaps inconsistent.  Critically, however, there is no direct, clear statement by the Commission that all ductile iron flanged fittings are out-of-scope.  Absent such clarity, it makes no sense to rely on an ambiguous passage from the ITC report as a reason to disregard the plain meaning of the scope language.

ASC raised these points during the remand proceeding in their November 30, 2021 comments on the draft redetermination (Rem-P.R. 7), but Commerce refused to opine on the meaning of the ITC report because Commerce incorrectly believed this Court's prior opinion deprived it of the discretion to do so.  *See Second Redetermination* at 10 ("While the petitioner argues that the Court misinterpreted the ITC's report, … Commerce is not in a position to assume what the Court meant or to dismiss what the Court has held.  We can only move forward based on the directive of the Court and, in this case, the Court held the 'evidence in the ITC Report supports a reasonable inference that ductile iron flanges were not within the scope of the

---

[2] The fact that domestic producers reported no production of in-scope ductile iron flanged fittings does not mean that such products must be carved out of the scope, because petitioners are not required to make every individual product within the class or kind of merchandise covered by an order.  *See, e.g., Thermal Paper from Germany, Japan, the Republic of Korea, and Spain: Final Decision on General Scope Issues* (September 24, 2021) at 5 (ACCESS Barcode No. 4164214) ("the petitioners' and U.S. producers' ability to produce certain types of thermal paper is irrelevant to Commerce's determination as to whether these products should be excluded from the scope of the investigations, and any resulting orders, because it is not necessary for the petitioners to produce all types of products within a class or kind of merchandise in order to receive an antidumping duty order on that entire class or kind of merchandise").

ITC's injury and threat investigation'"). Commerce then erred in finding that it was compelled by this Court's discussion of the ITC report to conclude that all ductile iron flanges are excluded from the scope. *Id.* As observed above, this Court did not direct any particular result. Although the Court held that the ITC Report *could* support a reasonable inference that ductile iron flanges are out-of-scope, *MCC* at 15, it did not hold that the ITC Report had to be read in that manner. *Id.* at 22. Commerce was free, therefore, to explain why the referenced statements in the ITC's report can be read consistently with the fact that (at least some) ductile iron flanged fittings are covered by the scope. Commerce's decision that it lacked such discretion is unsupported by substantial evidence and is otherwise not in accordance with law. The case should be remanded so that Commerce can explain its own interpretation of the ITC report and how that bears on the scope analysis.

## CONCLUSION

For the reasons set forth above, the *Second Redetermination* is unsupported by substantial record evidence and is otherwise not in accordance with law. Respectfully, the Court should remand again for Commerce to reconsider its decision.

                                         Respectfully submitted,

                                         */s/ Daniel L. Schneiderman*
                                         J. Michael Taylor
                                         Daniel L. Schneiderman

                                         KING & SPALDING LLP
                                         1700 Pennsylvania Avenue, NW
                                         Washington, DC  20006
                                         (202) 737-0500

                                         Counsel for Defendant-Intervenor
January 20, 2022                          ASC Engineered Solutions, LLC

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE TIMOTHY C. STANCEU, SENIOR JUDGE

|  |  |
|---|---|
| MCC HOLDINGS, <br><br>  Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br>  Defendant, <br><br> and <br><br> ASC ENGINEERED SOLUTIONS, LLC, <br><br>  Defendant-Intervenor. | Court No. 18-00248 |

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel certifies that these comments in support of the final remand redetermination comply with the word-count limitation described in the Court's Standard Chambers Procedures.  The comments contain **1,693** words according to the word count function of the word processing software used to prepare the memorandum.

                                        Respectfully submitted,

                                        */s/ Daniel L. Schneiderman*
                                        Daniel L. Schneiderman
                                        **KING & SPALDING, LLP**
                                        1700 Pennsylvania Avenue, NW
                                        Suite 200
                                        Washington, DC 20006-4706
                                        (202) 626-2950

                                        Counsel for Defendant-Intervenor
                                        ASC Engineered Solutions, LLC

January 20, 2022