Slip Op. 22-128

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| MCC HOLDINGS *doing business as* CRANE RESISTOFLEX, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> ASC ENGINEERED SOLUTIONS, LLC, <br><br> Defendant-Intervenor. | Before: Timothy C. Stanceu, Judge <br><br> Court No. 18-00248 |

**OPINION AND ORDER**

[Ordering a remand to the issuing agency of a determination that failed to comply with the court's order.]

Dated: November 18, 2022

*Peter J. Koenig*, Squire Patton Boggs (US) LLP, of Washington, DC, for plaintiff. With him on the submission were *Jeremy W. Dutra* and *Christopher D. Clark*.

*Joshua E. Kurland*, Trial Counsel, U.S. Department of Justice, of Washington, DC, for defendant. With him on the brief was *Bryan M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, and *L. Misha Preheim*, Assistant Director. Of counsel on the submissions was *William M. Purdy*, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC.

**Court No. 18-00248**                                                                                                                       Page 2

*Daniel L. Schneiderman*, King & Spalding LLP, of Washington DC, for defendant-intervenor.  With him on the submission was *J. Michael Taylor*.

Stanceu, Judge:  Plaintiff MCC Holdings dba Crane Resistoflex ("Crane"), an importer of certain ductile iron lap joint flanges ("Crane's flanges") commenced this litigation to contest an administrative decision by the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department") that its imported merchandise is within the scope of an antidumping duty order.

Before the court is the second redetermination upon remand ("Second Remand Redetermination"), which Commerce submitted in response to the court's opinion and order in *MCC Holdings dba Crane Resistoflex v. United States*, 45 CIT __, 537 F. Supp. 3d 1350 (2021) ("*Crane I*").  Final Results of Redetermination Pursuant to Court Order (Dec. 21, 2021), ECF No. 58-1 (*"Second Remand Redetermination"*).  In an effort to respond to the court's order while changing its position only under protest, Commerce stated in the Second Remand Redetermination that Crane's flanges are not subject to the Order.  Plaintiff has not commented in response to the Second Remand Redetermination.  Defendant-intervenor, ASC Engineered Solutions, LLC, has commented in opposition.

The court issues another remand order to Commerce.  The Department's latest decision misconstrues the court's opinion in *Crane I* in some respects and is not itself a new scope ruling in a form the court could sustain.  Instead, Commerce informs the court that if the court were to sustain the Second Remand Redetermination, Commerce

would issue a new scope ruling accordingly.  Under this proposal, Commerce would issue its final ruling outside of the court's direct review.  The court orders Commerce to submit for the court's consideration a revised remand redetermination that could go into effect if sustained.

## I. BACKGROUND

Background on this case is presented in the court's prior opinion and order and is summarized and supplemented herein.  *Crane I*, 45 CIT at __, 537 F. Supp. 3d at 1353-55.

Commerce issued an antidumping duty order on non-malleable cast iron pipe fittings from China (the "Order") on April 7, 2003.  *Notice of Antidumping Duty Order: Non-Malleable Cast Iron Pipe [Fittings] From the People's Republic of China*, 68 Fed. Reg. 16,765 (Int'l Trade Admin.) ("*Order*").  On August 29, 2018, Crane filed a request with Commerce for a scope ruling (the "Scope Ruling Request"), which advocated that Crane's flanges are outside the scope of the Order.  *Non-Malleable Cast Iron Pipe Fittings from China: Ductile Iron Lap Joint Flanges, Scope Request* (P.R. Doc. 1) ("*Scope Ruling Request*").[1]  On November 19, 2018, Commerce determined Crane's flanges to be within the scope of the Order (the "Final Scope Ruling").  *Final Scope Ruling on the Antidumping*

---

[1] All citations to documents from the administrative record are to public documents.  These documents are cited as "P.R. Doc. __."

*Duty Order on Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China: MCC Holdings dba Crane Resistoflex* (P.R. Doc. 16) ("*Final Scope Ruling*").

Crane brought this action on December 19, 2018, to contest the Final Scope Ruling. Summons, ECF No. 1; Compl., ECF No. 2.

In response to Crane's motion for judgment on the agency record, Pl. MCC Holdings dba Crane Resistoflex's Rule 56.2 Mot. for J. on the Agency R. (Aug. 23, 2019), ECF No. 27, defendant on December 30, 2019, filed a motion, unopposed, for this case to be remanded to Commerce in light of this Court's decision in *Star Pipe Prods. v. United States*, 43 CIT __, 365 F. Supp. 3d 1277 (2019) ("*Star Pipe I*"). Def.'s Unopposed Mot. to Stay Briefing Schedule and to Grant Voluntary Remand, ECF No. 32. The court granted defendant's motion in part and, considering the scope of the Department's requested remand too narrow, issued an order to remand the scope determination to Commerce for reconsideration in its entirety. Order 2 (Jan. 7, 2020), ECF No. 33.

Commerce submitted the first redetermination upon remand ("First Remand Redetermination") on April 3, 2020, in which it again concluded that Crane's flanges were within the scope of the Order. Final Results of Redetermination Pursuant to Ct. Order, ECF No. 39-1 ("*First Remand Redetermination*"). The court remanded the First Remand Redetermination to Commerce in *Crane I*, ruling that Commerce had failed to

**Court No. 18-00248** Page 5

consider certain material evidence on the record and reached some conclusions that were unsupported by substantial record evidence. 45 CIT at __, 537 F. Supp. 3d at 1353.

In response to the court's order in *Crane I*, Commerce filed the Second Remand Redetermination with the court on December 21, 2021. *See Second Remand Redetermination*. Defendant-intervenor filed its comments in opposition on January 20, 2022. Def.-Intervenor's Comments on the Final Results of Remand Redetermination, ECF No. 60. Defendant replied to the comments on February 4, 2022. Def.'s Resp. to Comments on Remand Results, ECF No. 61. Plaintiff did not comment in response to the Second Remand Redetermination.

## II. Discussion

### A. Jurisdiction and Standard of Review

The court exercises subject matter jurisdiction under section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(c), which grants jurisdiction over civil actions brought under section 516A of the Tariff Act of 1930 ("Tariff Act"), 19 U.S.C. § 1516a.[2] Among the decisions that may be contested according to section 516A is a determination of "whether a particular type of merchandise is within the class or kind of merchandise described in an . . . antidumping or countervailing duty order." *Id*.

---

[2] Citations to the United States Code and to the Code of Federal Regulations are to the 2018 editions.

Court No. 18-00248                                                                          Page 6

§ 1516a(a)(2)(B)(vi).  In reviewing an agency determination, including one issued in response to court order, the court must set aside any determination, finding, or conclusion found "to be unsupported by substantial evidence on the record, or otherwise not in accordance with law."  *Id*. § 1516a(b)(1)(B)(i).

### B. The Scope Language of the Order and Crane's Flanges

The Order defined the merchandise that is within the scope in the following terms (the "scope language"):

> [F]inished and unfinished non-malleable cast iron pipe fittings with an inside diameter ranging from 1/4 inch to 6 inches, whether threaded or unthreaded, regardless of industry or proprietary specifications.  The subject fittings include elbows, ells, tees, crosses, and reducers as well as flanged fittings.  These pipe fittings are also known as "cast iron pipe fittings" or "gray iron pipe fittings."  These cast iron pipe fittings are normally produced to ASTM A-126 and ASME B.16.4 specifications and are threaded to ASME B1.20.1 specifications.  Most building codes require that these products are Underwriters Laboratories (UL) certified.  The scope does not include cast iron soil pipe fittings or grooved fittings or grooved couplings.
>
> Fittings that are made out of ductile iron that have the same physical characteristics as the gray or cast iron fittings subject to the scope above or which have the same physical characteristics and are produced to ASME B.16.3, ASME B.16.4, or ASTM A-395 specifications, threaded to ASME B1.20.1 specifications and UL certified, regardless of metallurgical differences between gray and ductile iron, are also included in the scope of this petition.  These ductile fittings do not include grooved fittings or grooved couplings.  Ductile cast iron fittings with mechanical joint ends (MJ), or push on ends (PO), or flanged ends and produced to the

> American Water Works Association (AWWA) specifications AWWA C110 or AWWA C153 are not included.

*Order*, 68 Fed. Reg. at 16,765.

Crane's flanges include nine models of ductile iron lap joint flanges. *Final Scope Ruling* at 1. Each model is a single disc-shaped article made of ductile iron with an unthreaded center hole. *Scope Ruling Request* at Ex. 1. Surrounding the center hole are smaller, equally spaced, unthreaded holes that are present to accommodate bolts used in assembling a joint between the ends of two plastic-lined pipes. *Id.* at 1–3, Ex. 1. The pipes joined by Crane's flanges are used in the United States in assemblies of "process piping primarily for the chemical process industry." *Id.* at 1.

The Scope Ruling Request described an assembled lap joint as consisting of two flanges, a gasket placed between the flanges, and a set of bolts and nuts that are used as the means of clamping the two flanges together. *Id.* at 2, Ex. 1. The Scope Ruling Request added that "[t]here is no pipe fitting attached to the subject Flanges." *Id.* The flanges are described by industry standard ASME B16.42. *Id.* at 3.

### C. Defendant's Decision to Seek a Remand Following the Decision of this Court in *Star Pipe I*

In the Final Scope Ruling, Commerce ruled that five out of nine of Crane's flanges were within the scope of the Order. *Final Scope Ruling* at 1. Following Crane's contesting the Final Scope Ruling in this Court, defendant based its motion for a

Court No. 18-00248                                                                                      Page 8

remand on this Court's decision in *Star Pipe I*, in which this Court concluded that Commerce "failed to comply with its regulation when it reached a decision to place Star Pipe's flanges in the scope of the Order without considering the antidumping duty petition" and "failed to give fair and adequate consideration to record evidence contained in the final injury determination of the ITC [U.S. International Trade Commission] that detracts from its conclusion." *Star Pipe I*, 43 CIT at __, 365 F. Supp. 3d at 1282. The regulation, as in effect for the proceedings at issue in this case, instructed that Commerce will take into account "[t]he descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary [of Commerce] (including prior scope determinations) and the [International Trade] Commission." 19 C.F.R. § 351.225(k)(1).

### D. The Department's First Remand Redetermination

Based on a premise that Crane's flanges are "pipe fittings" for purposes of the scope language, Commerce concluded that these products are specifically described by the first sentence of the second paragraph of the scope language Order. *Crane I*, 45 CIT at __, 537 F. Supp. 3d at 1357 (citing *First Remand Redetermination* at 3–5). Specifically, the First Remand Redetermination found that five of Crane's flanges are "[f]ittings that are made out of ductile iron that have the same physical characteristics as the gray or cast iron fittings subject to the scope above." *Order*, 68 Fed. Reg. at 16,765. Commerce

Court No. 18-00248 Page 9

also found in the First Remand Redetermination, and plaintiff did not dispute, that the flanges it ruled to be within the scope have unthreaded inside diameters and that the inside diameters of five of the models were within the size range described in the first paragraph of the scope language of the Order. *First Remand Redetermination* at 4–5; *Order*, 68 Fed. Reg. at 16,765 ("[F]inished and unfinished non-malleable cast iron pipe fittings with an inside diameter ranging from 1/4 inch to 6 inches, whether threaded or unthreaded"). Addressing the sources described in its regulation, 19 C.F.R. § 351.225(k)(1), Commerce concluded that evidence attached as exhibits to the antidumping duty petition (the "Petition"), *Petition for Imposition of Antidumping Duties: Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China*, A-570-875 (Feb. 21, 2002) (P.R. Docs. 18–21, Attach. I), showed that the petitioners had intended to include products such as these in proposing a scope for the antidumping investigation and that evidence in the International Trade Commission's report of its final affirmative determination of threat to the domestic industry (the "ITC Report"), *Non-Malleable Cast Iron Pipe Fittings From China*, Inv. No. 731-TA-990 (Final), USITC Pub. No. 3586 (Mar. 2003) ("*ITC Report*"), and three prior Commerce Department scope rulings supported a conclusion that these products constituted in-scope merchandise.

### E.  The Court's Decision in *Crane I*

Commerce based its decision in the First Remand Redetermination to include Crane's flanges within the scope of the Order on its conclusion that these flanges were "pipe fittings" within the meaning of that term as used in the scope language.  Because the scope language does not define that term, *Crane I* considered it necessary to review the Department's conclusion that Crane's flanges were described by that term in light of the sources identified in 19 C.F.R. § 351.225(k)(1).  *Crane I* held that Commerce, although identifying what it considered to be support for its decision, "failed to base its First Remand Redetermination on findings supported by substantial evidence, when that record is considered on the whole."  *Crane I*, 45 CIT at __, 537 F. Supp. 3d at 1362.

In disagreeing with critical findings and conclusions Commerce had reached, *Crane I* pointed to evidence in the Petition detracting from the Department's conclusion. It ruled, further, that Commerce misinterpreted aspects of the ITC Report and ignored evidence therein supporting a conclusion that Crane's flanges are not subject to the Order.  *Crane I* explained, regarding prior Commerce Department determinations, why two of the prior scope rulings upon which Commerce relied were directed to flanged fittings, not flanges, and that the third ruling Commerce cited erred by misinterpreting the first two rulings and the ITC Report.

Court No. 18-00248 Page 11

As to the Petition, *Crane I* stated that while Commerce permissibly relied upon brochures included as exhibits to that document as evidence in support of the conclusion that the petitioners "'intended to cover flanges in the scope of the *Order*,'" 45 CIT at __, 537 F. Supp. 3d at 1357 (quoting *First Remand Redetermination* at 6), the brochures alone were not determinative on that issue.

*Crane I* explained that "[n]either the body of the Petition, nor the scope language of the Order that culminated from the investigation it launched, specifically addresses flanges." *Id.*, 45 CIT at __, 537 F. Supp. 3d at 1357. This Court added, further, that Commerce failed to address "certain language in the Petition" that "can be interpreted to indicate that the petitioners meant for the proposed investigation to be limited to goods produced for two applications: fire prevention / sprinkler systems and steam conveyance systems." *Id.*, 45 CIT at __, 537 F. Supp. 3d at 1357–58.

Second, this Court considered the conclusions Commerce drew from the ITC Report in the First Remand Redetermination to be unsupported by the text of that document. *Crane I* pointed to language in the ITC Report indicating that "the ITC declined to broaden the scope of the domestic like product to include flanged fittings made of ductile iron" and that "the ITC defined the scope of the domestic like product as corresponding to the scope of its injury and threat investigation." *Id.*, 45 CIT at __, 537 F. Supp. 3d at 1359 (citing *ITC Report* at 7–8). In the First Remand Redetermination,

**Court No. 18-00248** Page 12

Commerce disagreed with the ITC's finding that ductile iron flanged fittings were outside the scope of the Order, reasoning that such an interpretation contradicted the scope language. *Id.*, 45 CIT at __, 537 F. Supp. 3d at 1359. Specifically, Commerce noted that the scope language contains an express exclusion for certain ductile cast iron fittings that conform to specified AWWA standards, signifying that ductile cast iron fittings not conforming to the exclusion are subject merchandise. *Id.* This Court opined in *Crane I* that the Department's disagreement with the ITC's interpretation "misses the point." *Id.* The opinion explained that "[t]he ITC was aware of the specific exclusion Commerce provided for certain AWWA-conforming goods, and the ITC expressed no disagreement with respect to it," and that "the ITC, based on its own investigation, still determined that *all* ductile flanged fittings were outside the scope of the domestic like product, and therefore also outside the scope of its own injury / threat investigation." *Id.*, 45 CIT at __, 537 F. Supp. 3d at 1359 (citing *ITC Report* at I-8–9). In other words, the ITC intended to exclude ductile flanged fittings from the scope of its investigation regardless of whether these goods conformed to the specific exclusion. *Crane I* explained that "[t]he First Remand Redetermination errs in misinterpreting the significance of the ITC's discussion of like product and scope and in failing to address the negative implications it poses for the Department's ultimate conclusion." *Id.*, 45 CIT at __, 537 F. Supp. 3d at 1359.

The court also described as noteworthy that "the ITC Report does not discuss flanges (as opposed to flanged fittings) in describing the merchandise it considered to be within the scope of its own investigation" and that "ductile iron flanges share a defining physical characteristic with ductile iron flanged fittings, i.e., a flange." *Id.* Accordingly, *Crane I* took issue with the agency's conclusion that "'although the ITC considered all flanged ductile cast iron fittings to be excluded from the scope, it did not exclude ductile iron *flanges* from the scope or the domestic like product.'" 45 CIT at __, 537 F. Supp. 3d at 1358 (quoting *First Remand Redetermination* at 8). This Court also cast doubt upon the Department's related finding that "'Crane has provided no evidence demonstrating that the ITC excluded flanges from its analysis in its investigation.'" *Id.*, 45 CIT at __, 537 F. Supp. 3d at 1358 (quoting *First Remand Redetermination* at 9–10). *Crane I* characterized these conclusions as "misleading and erroneous" because Commerce failed to acknowledge that "the ITC did not identify flanges as within the scope of either its investigation or the scope of its domestic like product." *Id.*, 45 CIT at __, 537 F. Supp. 3d at 1358. The court noted that Commerce considered Crane's products to be ductile fittings that are flanges but not ductile "flanged fittings," which the ITC excluded. *Id.* The court concluded that Commerce ignored this critical context and, therefore, overlooked that "evidence in the ITC Report supports a reasonable inference that ductile iron flanges were not within the scope of the ITC's injury and

threat investigation." *Id.* In short, the ITC Report provided evidence that the ITC never considered products such as those described by Crane in the Ruling Request to be within the scope of its investigation and, further, identified a highly similar product as expressly excluded from that investigation.

*Crane I* additionally took issue with the statement in the First Remand Redetermination that "[t]he ITC report . . . defines a pipe fitting as an iron casting 'generally used to connect the bores of two or more tubes, connect a pipe to another apparatus, change the direction of fluid flow, or close a pipe.'" *First Remand Redetermination* at 8 (quoting *ITC Report* at 4)." The court viewed that the Department's conclusion that "flanges are 'pipe fittings' within the meaning of the scope language of the Order" as "unwarranted" because "[t]he language in the ITC Report is not stated as a definition of the term 'pipe fitting' and instead is a general description of the uses of pipe fittings" and that "[t]here is no indication in the text of the ITC Report that the ITC was addressing in the quoted language the specific issue of whether a flange—a good it did not discuss—is, generally speaking, a pipe fitting." *Crane I*, 45 CIT at __, 537 F. Supp. 3d at 1360 (citations omitted). The court also concluded that the Department's finding that "'the ITC Report also specifically references certain types of flanges as being included within its definition of a pipe fitting'" was "unsupported by

Court No. 18-00248 Page 15

the evidence it cited," which was addressing a flanged fitting, not a flange. *Id.* (quoting *First Remand Redetermination* at 9).

Third, the court in *Crane I* held that Commerce erred in relying on two past rulings that did not support "a determination that flanges are pipe fittings within the meaning of the Order." *Id.*, 45 CIT at __, 537 F. Supp. 3d at 1360–61 (citing *Star Pipe I*, 43 CIT at __, 365 F. Supp. 3d at 1285 n.8).[3] The court further found that the "UV Ruling," *Final Scope Ruling on the Antidumping Duty Order on Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China: Request by U.V. International LLC* (P.R. Doc. 16, Attach. IV) (May 12, 2017), a third prior scope ruling, "appears to be on point, but the support it provides is limited by an erroneous analysis." *Crane I*, 45 CIT at __, 537 F. Supp. 3d at 1361. The court explained that the UV Ruling mistakenly relied on the discussion in the ITC Report of "pipe fittings" in a similar manner as the First Remand Redetermination, which the court in *Crane I* had found to be misguided. *Id.*, 45 CIT at __, 537 F. Supp. 3d at 1362. The court reasoned, further, that the UV Ruling further erred in misinterpreting the two prior rulings (the "Taco Ruling" and "Napac Ruling")

---

[3] *See Final Scope Ruling on the Antidumping Duty Order on Finished and Unfinished Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China: Request by Napac for Flanged Fittings* (P.R. Doc. 16, Attach. V) (Sept. 19, 2016); *Final Scope Ruling on the Black Cast Iron Flange, Green Ductile Flange, and the Twin Tee* (P.R. Doc. 16, Attach. VI) (Sept. 19, 2008).

as having addressed flanges when, in fact, they were concerned with flanged fittings. *Id.*, 45 CIT at __, 537 F. Supp. 3d at 1362 (citations omitted).

Ultimately, in remanding the First Remand Redetermination to Commerce, the court held in *Crane I* that "Commerce must reconsider its decision in light of the deficiencies the court has identified." *Id*, 45 CIT at __, 537 F. Supp. 3d at 1362. The court further explained that it "does not hold that Crane's flanges are, or are not, within the scope of the Order" and "[t]hat is a determination for Commerce to make upon remand." *Id.*

### F. The Second Remand Redetermination

The Second Remand Redetermination is not a decision in a form the court could sustain. The concluding paragraph of the Second Remand Redetermination states as follows:

> Based on the above analysis, Commerce continues to find Crane's ductile iron flanges to be outside the scope of the AD order on pipe fittings from China. Should the Court affirm these Final Results of Redetermination, Commerce will issue a revised scope ruling accordingly.

*Second Remand Redetermination* at 13. The Department's proposed resolution seeks court approval for a decision that, unlike the agency determination contested in this litigation, is not a scope determination but instead is preliminary to such a decision. Because it is not the actual scope determination Commerce plans to issue, it could not be put into effect should it be sustained, and the agency decision that would follow if it were

Court No. 18-00248								Page 17

sustained would escape direct judicial review. The court concludes that the Second Remand Redetermination is unsatisfactory.

The court must rule on an agency decision, including one submitted in response to court order, by considering the decision according to the reasoning the agency puts forth. *See Michigan v. EPA*, 576 U.S. 743, 758 (2015) (It is a "foundational principle of administrative law" that judicial review of agency action is limited to "the grounds that the agency invoked when it took the action." (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943))). Not only would the resolution of this litigation that the Department has offered deny the court the opportunity to review the agency's actual decision on remand, it also would provide no opportunity for the parties to comment on that decision before the court reviews it. For these reasons, the Department's proposed resolution of this litigation does not allow the court to perform its essential judicial review function, and the court, therefore, rejects it. The court is directing Commerce to issue a third remand redetermination that, like the original agency determination contested in this litigation, is a scope ruling or determination for the court's review that would go into effect if, following judicial review, it is sustained.

The failure to provide for adequate judicial review is not the only flaw in the Second Remand Redetermination. The document misconstrues *Crane I* to conclude that the court made "findings" and implies that Commerce is reaching the decision to

exclude Crane's flanges from the Order out of a need to implement those "findings." *Second Remand Redetermination* at 5 (". . . because the Court has held that 'evidence in the ITC Report supports a reasonable inference that ductile iron flanges were not within the scope of the ITC's injury and threat investigation,' under respectful protest, were [*sic*] are implementing the Court's findings." (quoting *Crane I*, 45 CIT at __, 537 F. Supp. 3d at 1358)). This statement also misconstrues *Crane I*. The court did not state findings, and the language from *Crane I* on which Commerce relied merely described evidence that "supports a reasonable inference." *Crane I*, 45 CIT at __, 537 F. Supp. 3d at 1358. It is Commerce, not the court, that must make factual findings. Nor did *Crane I* direct the result. The opinion stated that "Commerce must reconsider its decision in light of the deficiencies the court has identified" and that "[t]he court does not hold that Crane's flanges are, or are not, within the scope of the Order." *Id.*, 45 CIT at __, 537 F. Supp. 3d at 1362. "That is a determination for Commerce to make upon remand." *Id.*

### III. Conclusion and Order

The Second Remand Redetermination is not in a form in which the court could sustain it and misconstrues the court's opinion and order in *Crane I*. Commerce must issue a new determination that decides the issue of whether or not Crane's flanges are within the scope of the Order based on findings that are supported by the evidence on the record considered as a whole, including evidence detracting from its findings.

Consistent with this Opinion and Order, the new determination must be in a form that would go into effect if sustained upon judicial review and be based on reasoning that does not misconstrue a previous decision of the court.

Upon consideration of the Second Remand Redetermination and all papers and proceedings had herein, and upon due deliberation, it is hereby

**ORDERED** that the Second Remand Redetermination, Final Results of Redetermination Pursuant to Court Order (Dec. 21, 2021), ECF No. 58-1, is remanded to Commerce; it is further

**ORDERED** that Commerce, within 30 days from the date of issuance of this Opinion and Order, shall submit a third redetermination upon remand ("Third Remand Redetermination") that complies with this Opinion and Order; it is further

**ORDERED** that plaintiff and defendant-intervenor shall have 15 days from the filing of the Third Remand Redetermination in which to submit comments to the court; and it is further

**ORDERED** that should plaintiff or defendant-intervenor submit comments, defendant shall have 10 days from the date of filing of the last comment to submit a response.

/s/ Timothy C. Stanceu
Timothy C. Stanceu, Judge

Dated: November 18, 2022
       New York, New York