A-570-875<br>
Remand Redetermination<br>
Slip Op. 22-128<br>
Scope Inquiry<br>

MCC Holdings dba Crane Resistoflex – Non-Malleable Cast Iron Pipe Fittings from China

**Public Document**<br>
E&C/OIV:  MC

*MCC Holdings dba Crane Resistoflex v. United States and Anvil International, LLC*
**Court No. 18-00248, Slip Op. 22-128 (November 18, 2022)**
**Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China**

**FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT REMAND**

**I.    SUMMARY**

The U.S. Department of Commerce (Commerce) has prepared these final results of redetermination pursuant to the remand order of the U.S. Court of International Trade (the Court) in *Crane II*.[1]  These final results of redetermination pertain to the scope inquiry submitted by MCC Holdings dba Crane Resistoflex (Crane)[2] regarding whether five of its ductile iron lap joint flanges (ductile iron flanges)[3] are pipe fittings covered by the antidumping duty (AD) order on non-malleable cast iron pipe fittings (pipe fittings) from the People's Republic of China (China).[4] On December 21, 2021, pursuant to the Court's second remand order in *Crane I*,[5] Commerce

---

[1] *See MCC Holdings dba Crane Resistoflex v. United States and ASC Engineered Solutions, LLC* Court No. 18-00248, Slip Op. 22-128 (November 18, 2022) (*Crane II*).
[2] *See* Crane's Letter, "Non-Malleable Cast Iron Pipe Fittings from China:  Ductile Iron Lap Joint Flanges, Scope Request," dated August 29, 2018.
[3] *See Crane I* at 11.
[4] *See Notice of Antidumping Duty Order:  Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China*, 68 FR 16765 (April 7, 2003) (*Order*).
[5] *See MCC Holdings dba Crane Resistoflex v. United States and Anvil, LLC*, Court No. 18-00248, Slip Op. 21-109 (August 26, 2021) (*Crane I*).  On April 2, 2020, pursuant to the voluntary remand, Commerce completed the *First Final Remand* where it concluded that Crane's ductile iron flanges were within the scope of the *Order*.  *See Final Results of Redetermination Pursuant to Court Remand, MCC Holdings dba Crane Resistoflex v. United States and Anvil, LLC*, Court No. 18-00248 (January 7, 2020), dated April 2, 2020, (*First Final Remand*), available at https://access.trade.gov/resources/remands/18-00248.pdf.  Subsequently, the Court issued its remand order in *Crane I*.

issued its *Second Final Remand*, in which Commerce determined, under protest, that Crane's ductile iron flanges were outside the scope of the *Order*.[6]

In *Crane I*, the Court held that Commerce's first remand redetermination,[7] where Commerce found that Crane's flanges are pipe fittings within the scope of the *Order*, was not supported by substantial record evidence.[8]  Specifically, the Court explained that certain of Commerce's findings related to the scope language, past scope rulings, the Petition[9], and the International Trade Commission (ITC) Report[10] were not supported by substantial evidence, and that Commerce failed to address, or address in any meaningful way, certain evidence on the record that detracts from Commerce's determination that Crane's ductile iron flanges were covered by the scope of the *Order*.[11]  Accordingly, the Court remanded to Commerce to issue a decision, consistent with the Court's opinion, as described further below.

In *Crane II*, the Court explained that Commerce's *Second Final Remand* misconstrues some respects of the Court's opinion in *Crane I* and was not in the form of a new scope ruling the Court could sustain.[12]  Specifically, the Court stated that in the *Second Final Remand*, Commerce had informed the Court that Commerce would only issue a final scope ruling after the Court sustained the *Second Final Remand*.[13]  The Court found that this would amount to

---

[6] *See Final Results of Redetermination Pursuant to Court Remand, MCC Holdings dba Crane Resistoflex v. United States and Anvil, LLC,* Court No. 18-00248, Slip Op. 21-109 (CIT August 26, 2021), dated December 20, 2021 (Second Final Remand Redetermination), available at https://access.trade.gov/resources/remands/20-128.pdf.
[7] *See Final Results of Redetermination Pursuant to Court Remand, MCC Holdings dba Crane Resistoflex v. United States,* Court No. 18-00248, Slip Op. 21-109 (CIT January 7, 2020), dated April 2, 2020) (*First Final Remand*), available at https://access.trade.gov/resources/remands/18-00248.pdf.
[8] *See Crane I* at 22.
[9] *See* Petitioners' Letter, "Petition for Imposition of Antidumping Duties:  Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China," dated February 21, 2002 (Petition).
[10] *See Non-Malleable Cast Iron Pipe Fittings from China*, Investigation No. 731-TA-990 (Final), USITC Pub. No. 3586, 2003 (ITC Report).
[11] *Id*.
[12] *See Crane II* at 2 and 17-19.
[13] *Id*. at 2-3.

2

Commerce issuing its final ruling outside of the Court's direct review.[14] The Court, thus, directed Commerce to submit a revised remand determination in a form and manner that could be sustained by the Court.[15] The Court also stated that Commerce had misconstrued the Court's ruling in *Crane I*, and remanded to Commerce to issue a new determination based on Commerce's own findings that is supported by substantial evidence on the record.[16]

In these final results of redetermination, we have continued to find, under respectful protest, that Crane's ductile iron flanges fall outside the scope of the *Order*. We have revised our analysis regarding *Crane I* to be consistent with *Crane II*. Furthermore, consistent with *Crane II*, we have revised these final results of redetermination in a manner that more clearly defines Commerce's intentions with respect to the nature of these remand results. Specifically, we are clarifying that we do not intend to issue a scope ruling or other agency determination subsequent to the Court's review of this remand redetermination. This remand redetermination serves as the agency determination and is subject to the Court's review. Thus, if the Court affirms this redetermination, a *Federal Register* notice will be published stating that, consistent with the Court's holdings, Crane's ductile iron flanges are outside the scope of the *Order*. Further, relevant instructions to U.S. Customs and Border Protection (CBP) giving effect to the determination, as sustained by the Court, will also be issued at that time as appropriate.

**II.   ANALYSIS**

    **1. Scope of the *Order***

The scope of the *Order* is as follows:

> The products covered by this *Order* are finished and unfinished nonmalleable cast iron pipe fittings with an inside diameter ranging from 1/4 inch to 6 inches, whether threaded or unthreaded, regardless of industry or proprietary

---

[14] *Id*. at 3.
[15] *Id*.
[16] *Id*. at 2-3, 17-19.

specifications.  The subject fittings include elbows, ells, tees, crosses, and reducers as well as flanged fittings.  These pipe fittings are also known as "cast iron pipe fittings" or "gray iron pipe fittings."  These cast iron pipe fittings are normally produced to ASTM A-126 and ASME B.16.4 specifications and are threaded to ASME B1.20.1 specifications.  Most building codes require that these products are Underwriters Laboratories (UL) certified.  The scope does not include cast iron soil pipe fittings or grooved fittings or grooved couplings.

Fittings that are made out of ductile iron that have the same physical characteristics as the gray or cast iron fittings subject to the scope above or which have the same physical characteristics and are produced to ASME B.16.3, ASME B.16.4, or ASTM A-395 specifications, threaded to ASME B1.20.1 specifications and UL certified, regardless of metallurgical differences between gray and ductile iron, are also included in the scope of this *Order*.  These ductile fittings do not include grooved fittings or grooved couplings.  Ductile cast iron fittings with mechanical joint ends (MJ), or push on ends (PO), or flanged ends and produced to American Water Works Association (AWWA) specifications AWWA C110 or AWWA C153 are not included.

Imports of covered merchandise are classifiable in the Harmonized Tariff Schedule of the United States (HTSUS) under item numbers 7307.11.00.30, 7307.11.00.60, 7307.19.30.60 and 7307.19.30.85.  HTSUS subheadings are provided for convenience and customs purposes.  The written description of the scope of the *Order* is dispositive.

Commerce determined in the Crane Scope Ruling[17] that Crane's ductile iron flanges are described by the first sentence of the second paragraph of the scope, because they incorporate the same physical characteristics as "{f}ittings that are made out of ductile iron that have the same physical characteristics as the gray or cast iron fittings subject to the scope above or which have the same physical characteristics and are produced to ASME B.16.3, ASME B.16.4, or ASTM A-395 specifications, threaded to ASME B1.20.1 specifications and UL certified."[18]  For each of the five flanges subject to this remand proceeding, the inside diameters are between ¼ inch and 6

---

[17] *See* Memorandum, "Final Scope Ruling on the Antidumping Duty Order on Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China:  MCC Holdings dba Crane Resistoflex," dated November 19, 2018 (Crane Scope Ruling).
[18] *See Crane I* at 11.

4

inches.[19]  In addition, Crane's ductile iron flanges are unthreaded.[20]  Accordingly, since the first paragraph of the *Order* covers pipe fittings with an inside diameter ranging from ¼ inch to six inches, whether threaded or unthreaded, and Crane's threaded flanges are within this diameter range, Commerce determined that Crane's flanges had the same physical characteristics as those subject to the first paragraph of the scope.[21]

The Court in *Crane I* explained that evidence in the Petition "lends support to a finding" that flanges could, in general, be considered pipe fittings.[22]  However, the Court also observed that flanges are not referenced in the scope language of the *Order* or the Petition,[23] whereas the Court indicated that the ITC Report contains "evidence showing that ductile iron flanges share a defining physical characteristic with ductile iron flanged fittings."[24]

Although the narrative of the Petition, like the language of the scope of the *Order*, does not mention flanges, we note that product catalogues from Anvil International LLC (Anvil) and Ward Manufacturing Inc., the petitioners in the investigation, include information to demonstrate that the petitioners "intended to cover flanges in the scope of the *Order*"[25] and both referenced flanges as a type of pipe fitting in several instances in the Petition.[26]

However, in *Crane I*, the Court explained that the scope language did not clearly define "pipe fittings" as they relate to ductile iron flanges, and thus Commerce's decision must be

---

[19] *Id*.
[20] *Id*.
[21] *Id*. at 11-12.
[22] *Id*. at 13.
[23] *Id*.
[24] *Id*. at 16.
[25] *Id*. at 12.
[26] *See* Petition at Exhibit 2.  For example, in *Star Pipe II*, the Court observed that the Anvil pipe fittings product catalogue in the Petition "depicts a 'flange union gasket type' appearing to be similar to the flanges under consideration … {and} a 'floor flange' that resembles one of Star Pipe's flanges."  *See Star Pipe Products v. United States and Anvil International*, 463 F. Supp. 3d 1366 (2020) Court No. 17-00236, Slip Op. 20-114 (August 11, 2020) (*Star Pipe II*), at 8.

reviewed in light of the sources identified in 19 CFR 351.225(k)(1). In accordance with the Court's opinion, we have further examined the sources under 19 CFR 351.225(k)(1), taking into account *Crane I* and *Crane II*, as discussed below.

### 2. Ductile Iron Flanged Fittings and Flanges

The Court raised concerns with several of Commerce's findings with respect to the ITC Report, stating that "the evidence in the ITC Report does not support the conclusions Commerce drew from it."[27] Specifically, the Court explained that the ITC defined the domestic like product as corresponding to the scope of its investigation and, at the same time, declined to broaden the domestic like product to include any ductile flanged fittings.[28] The Court further explained that the ITC also "determined that *all* ductile flanged fittings were outside of the scope of the domestic like product, and therefore also outside the scope of its own injury/threat investigation."[29] In view of this, the Court stated that, pursuant to section 731 of the Tariff Act of 1930, as amended, Commerce may impose antidumping duties only on those goods it determines are unfairly traded.[30]

The Court thus explained that Commerce failed to analyze the ITC Report's discussion of the possible exclusion for ductile iron flanged fittings and its relationship to ductile iron flanges.[31] We respectfully disagree that Commerce did not address this evidence. In the *First Final Remand*, we evaluated the evidence in the ITC Report along with the other sources under 19 CFR 351.225(k)(1) in discussing that flanges and flanged fittings are separate and distinct products.[32] As explained in the *First Final Remand*, we evaluated evidence in the ITC Report

---

[27] *See Crane I* at 14.
[28] *Id.* at 15.
[29] *Id.* at 16 (emphasis in original).
[30] *Id.* at 17.
[31] *Id.* at 18-19.
[32] *See First Final Remand* at 8-10.

6

that, according to the Court's order in *Crane I*, would detract from our finding that flanges are covered by the *Order*, and weighed that evidence with other record information, including the Petition.[33]  In any event, in consideration of *Crane I* and *Crane II* and further review of the evidence on the record,[34] under respectful protest, we find that the sources identified in 19 CFR 351.225(k)(1) do not support a finding that the ductile iron flanges are within the scope of the *Order*.

### 3. Prior Scope Proceedings

The Court indicated that Commerce's reliance on previous scope rulings to demonstrate that flanges are pipe fittings within the meaning of the *Order* was unsupported by record evidence.  In particular, the Court explained that the proposition that Commerce "has previously found that ductile iron fittings are covered by the scope of the Order unless they meet AWWA C110 or AWWA C153 specifications"[35] to be lacking an evidentiary basis.  The Court further explained that none of the products at issue in the prior scope rulings resembled Crane's flanges and that Commerce's reliance on prior scope rulings for the purpose of inclusion does not support a conclusion that the *Order* covers Crane's flanges.[36]  Therefore, in reviewing all record evidence and taking into account *Crane I* and *Crane II* regarding Commerce's reliance on these prior scope rulings, under respectful protest, we no longer find that the prior scope rulings support a finding that ductile iron flanges are within the scope of the *Order*.

### III. FINAL RESULTS OF REDETERMINATION

As described above, upon review of all evidence contained on the record and *Crane I* and *Crane II*, we find, under respectful protest, that the record lacks the necessary evidentiary

---

[33] *Id.* at 8-30.
[34] *See Crane I* at 15.
[35] *Id.* at 20.
[36] *Id.*

support in the scope language, Petition, ITC report and prior scope determinations to support a finding that Crane's flanges are within the scope of the *Order*. Therefore, based on the above analysis, we concluded that the five ductile iron flanges subject to first remand redetermination are outside the scope of the *Order*.

Pursuant to 19 CFR 351.225(k)(1), we found that Commerce must take into account the following factors when conducting a scope ruling under this provision: "{t}he descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary {of Commerce} (including prior scope determinations) and the {U.S. International Trade} Commission."[37] In this proceeding, taking into account *Crane I* and *Crane II*, Commerce has further elaborated on the descriptions of the merchandise contained in the scope, the Petition, and the ITC's determination in its investigation. These materials, along with other information from the investigation, Crane's scope request, and the Court's holdings are dispositive as to whether Crane's five ductile iron flanges, that are the subject of the First Final Remand Redetermination, are pipe fittings subject to the *Order*. Accordingly, we find it unnecessary to conduct an analysis under 19 CFR 351.225(k)(2). As a part of the *Second Final Remand*, we addressed comments from the petitioner[38] and Crane,[39] which we have incorporated into this third final results of determination.

In *Crane II*, the Court states that in the *Second Final Remand*, Commerce concluded that the Court made "findings" and implied that its determination to find Crane's ductile iron flanges

---

[37] *See* 19 CFR 351.225(k)(1).
[38] *See* Petitioner's Letter, "Non-Malleable Cast Iron Pipe Fittings from the People's Republic Of China/Comments On Draft Results Of Second Redetermination," dated November 29, 2021 (Petitioner Second Remand Redetermination Comments). Anvil, which reported that it changed its name to ASC Engineered Solutions, LLC on April 5, 2021, submitted comments on the prior draft results of redetermination. Ward has not filed any submission on the record of the Crane scope inquiry proceeding. Accordingly, for ease of reference, we refer to Anvil as the petitioner.
[39] *See* Crane's Letter, "Crane – Non-Malleable Pipe Fittings from China – Scope," dated November 30, 2021 (Crane Second Remand Redetermination Comments).

out-of-scope was out of a need to implement the Court's findings.[40] The Court stated that these conclusions by Commerce misconstrued its opinion and were incorrect and that the Court, instead, had only directed Commerce to "reconsider its decision in light of the deficiencies the court has identified."[41] "{T}he {c}ourt does not hold that Crane's flanges are, or are not, within the scope of the Order" and "{t}hat is a determination for Commerce to make upon remand."[42] We find, based on the analysis above and under respectful protest, that Crane's ductile iron flanges are outside the scope of the *Order*.

In addition, citing Commerce's statement that "{s}hould the Court sustain these Final Results of Redetermination, Commerce will issue a revised scope ruling accordingly," the Court ruled that the Second Final Remand Determination "is not a decision in a form the court could sustain" because it "is not a scope determination but instead is preliminary to such a decision."[43] The Court further explained that because the *Second Final Remand* is "not the actual scope determination Commerce plans to issue, it could not be put into effect should it be sustained, and the agency decision that would follow if it were sustained would escape direct judicial review."[44] Thus, the Court directed Commerce to issue a third remand redetermination that is in a form that would go into effect if sustained upon judicial review and be based on reasoning that does not misconstrue a previous decision of the Court.[45]

As a result of these final results of redetermination, because we have found no further evidence on the record that may support a finding that the ductile iron flanges are within the scope, we have determined, under respectful protest, that Crane's ductile iron flanges are outside

---

[40] *See Crane II* at 17-18.
[41] *Id.* at 18.
[42] *Id.*
[43] *Id.* at 16.
[44] *Id.* at 16-17.
[45] *Id.* at 18-19.

9

the scope of the *Order*. We also clarify that these final results of redetermination contain the entirety of Commerce's analysis of whether Crane's ductile iron flanges are covered by the scope of the *Order* with respect to this remand redetermination. We do not intend to issue another determination or scope ruling on Crane's ductile iron flanges subsequent to judicial review of this redetermination, should the Court sustain Commerce's findings. If the Court sustains this redetermination, a *Federal Register* notice will be published stating that Crane's ductile iron flanges are outside of the scope of the *Order*. Furthermore, instructions will be issued to CBP, directing CBP to give effect to this determination as appropriate.

### IV.     COMMENTS ON THE PRIOR DRAFT RESULTS OF REDETERMINATION[46]

On November 18, 2021, as a part of the prior remand proceeding subsequent to the Court's decision in *Crane I*, *i.e.*, the *Second Final Remand* proceeding, Commerce issued its draft results of redetermination and provided interested parties an opportunity to comment.[47] Commerce received comments from the petitioner[48] and Crane[49] and addressed them in its *Second Final Remand*. As these comments were considered and analyzed as part of the *Second Final Remand*, we have also included the summary and analysis in these final results of redetermination. We have not made any changes to our conclusion in these final results of redetermination. Instead, we have revised our responses to the comments below to be in accordance with *Crane II*.

---

[46] All issues, comments, position statements and citations in this section were made in reference to, and submitted on the record of, the *Second Final Remand* proceeding.
[47] *See* Draft Results of Redetermination, MCC Holdings dba Crane Resistoflex v. United States and Anvil International, LLC, Court No. 18-00248, Slip Op. 21-109, dated August 26, 2021 (Second Draft Results 2021).
[48] *See* Petitioner Second Remand Redetermination Comments (submitted in the record of the Second Remand Redetermination proceeding).
[49] *See* Crane Second Remand Redetermination Comments (submitted in the record of the Second Remand Redetermination proceeding).

**Issue 1:** **Whether the Plain Language of the Scope Should Be Used to Solely Determine Scope Coverage for Crane's Flanges**

*Petitioner's Comments on the Prior Draft Results*

The petitioner argued that Commerce's conclusion in the Second Draft Results 2021, that "Crane's flanges are pipe fittings that have the same physical characteristics as those described in the first paragraph of the scope," is correct.[50] However, the petitioner contended that Commerce's ultimate decision to find Crane's flanges out-of-scope in the Second Draft Results 2021 violates the framework established by the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) for evaluating scope issues.[51] Specifically, according to this framework, the petitioner argued that the plain language of the scope is controlling and should be determinative of whether Crane's flanges are in-scope.[52] However, the petitioner contended that in the Second Draft Results 2021, and under protest, Commerce found Crane's flanges to be out-of-scope based on the Court's "misinterpretation" of language in the ITC report that ductile iron flanged fittings were excluded from the domestic like product.[53] The petitioner argued that there is no direct statement from the ITC that all flanged fittings are out-of-scope.[54] The petitioner argued that the Court and Commerce's interpretation of the ITC report contradict the framework established by the Federal Circuit that the plain language of the scope should be determinative of coverage.[55] In addition, the petitioner argued that flanged fittings and flanges are different items so it does not follow that Crane's flanges are not covered by the scope simply because the ITC indicated that flanged fittings are not covered by Crane's scope.[56] Therefore, for the final

---

[50] *See* Petitioner Second Remand Redetermination Comments at 1.
[51] *Id.* at 2.
[52] *Id.*
[53] *Id.* at 3.
[54] *Id.* at 5.
[55] *Id.* at 3.
[56] *Id.* at 5.

11

remand redetermination, given the ambiguity of the ITC report, rather than adopt the Court's scope explanations under protest, the petitioner argued that Commerce should explain why certain statements in the ITC Report are consistent with the fact that some flanges are covered by the scope and find Crane's flanges to be in-scope.

*Crane's Comments on the Prior Draft Results*

Crane agreed with Commerce's finding that its flanges are not in-scope.[57] However, Crane took exception to Commerce's statement, in the Second Draft Results 2021, that Crane's flanges are fittings according to the plain language of the scope.[58] Crane argued that meeting dimensional criteria, as stated in the first sentence of the scope, is not a sufficient basis to find that Crane's flanges are in-scope.[59] Further, Crane disagreed that any language in the ITC Report indicated that ductile iron flanges share a defining physical characteristic with ductile iron flanged fittings.[60] Crane argued that Commerce does not offer any explanation regarding this claim in the Second Draft Results 2021, nor did Commerce even discuss why any apparent physical similarities between ductile iron flanges and ductile iron fittings would determine scope coverage of the *Order*.[61]

**Commerce's Position on the Prior Draft Results:**

As explained above, Commerce agreed with the petitioner's argument that the plain language of the scope covers Crane's flanges in the First Final Remand Redetermination. Commerce explained this point, as well as various other justifications supporting a finding that the products were in scope, thoroughly in the Scope Ruling and the First Final Remand

---

[57] *See* Crane Second Remand Redetermination Comments at 1.
[58] *Id*. at 3.
[59] *Id*.
[60] *Id*.
[61] *Id*.

Redetermination. For these final results of redetermination, consistent with *Crane I and Crane II*, we have considered all the evidence contained on the record, including the sources identified in 19 CFR 351.225(k)(1). In addition, in response to Crane's prior comments, we also note that in the Scope Ruling, First Final Remand Redetermination, and the Second Final Remand Redetermination, Commerce's determination regarding scope coverage was based on more than dimensional criteria. Specifically, Crane's flanges also meet the criterion of being unthreaded. However, in *Crane I*, the Court explained that the plain scope language was insufficient to determine coverage given information contained in the ITC Report. The Court indicated that "evidence in the ITC Report supports a reasonable inference that ductile iron flanges were not within the scope of the ITC's injury and threat investigation,"[62] and thus Commerce's finding that the ductile iron flanges were within the plain language of the scope was unsupported by substantial evidence when considering the record as a whole. While the petitioner argued that the Court misinterpreted the ITC's report, and Crane argued that there is no language in the ITC Report to show physical similarities between pipe fittings and flanges, Commerce has reviewed the evidence on the record, in light of *Crane I* and *Crane II*, and has determined under protest that the ITC Report does not support a finding that Crane's ductile iron flanges are within the scope.[63] Furthermore, Commerce has not identified any new evidence found on the record to support a determination that Crane's ductile iron flanges are within the scope of the *Order*. Therefore, for these final results of redetermination, after considering all the evidence on the record, we are finding, under respectful protest, that Crane's flanges are not in-scope.

---

[62] *See Crane I* at 15.
[63] *Id*.

**Issue 2:        Whether Commerce Provided Evidence to Support Its Decision to Respectfully Protest the Court's Decision in *Crane I***

*Crane's Comment on the Prior Draft Results*

Crane stated that outside of finding Crane's flanges to be out-of-scope under protest, Commerce did not provide any analysis or substantial evidence to describe its reason for respectfully protesting the Court's decision.[64] Crane noted that the only evidence cited by Commerce is the petitioner's product catalogues which contain information regarding flanges.[65] However, Crane argued that these product catalogues were not included in the Petition that led to the *Order* or the investigation.[66] Crane contended that the product catalogues were first submitted by the petitioner during this remand proceeding and created and dated well after the original investigation.[67] Crane stated that "the fact that Petitioner, after the fact, revised its product catalogue that now allegedly covers some flanges, if anything supports that the flanges were not within the scope of the original investigation at the time of the investigation, nor intended to be."[68] In addition, Crane contended that by "Commerce's insistence on relying on product catalogues to determine the scope of an Order, the scope of all antidumping petitions would cover all products in the petitioner company's product catalogues, as petitioner writes it, which is not Commerce practice."[69] Therefore, Crane argued that these product catalogues should not be a part of the record of this scope proceeding and should not be used to "justify the conclusion that Petitioner originally intended the fittings Order to cover flanges."[70]

---

[64] *See* Crane Second Remand Redetermination Comments at 1-2.
[65] *Id*. at 2.
[66] *Id*.
[67] *Id*.
[68] *Id.*
[69] *Id.*
[70] *Id.*

Other than these arguments, Crane stated that it had nothing to "answer" regarding Commerce's conclusions in the draft remand results because Commerce failed to explain why the Court was wrong and failed to explain it reasons for agreeing with the Court under protest.[71]

**Commerce's Position on the Prior Draft Results:**

We disagree with Crane. First, in the Second Draft Results 2021, we stated that we were respectfully protesting because we believe that the plain language of the scope is sufficient to determine that Crane's flanges are in-scope. Second, in *Crane I,* the Court explained that Commerce failed to analyze the ITC Report's discussion of the possible exclusion for ductile iron flanged fittings and its relationship to ductile iron flanges.[72] In the Second Draft Results 2021, we respectfully disagreed with the Court, pointing to our analysis of this issue in the First Final Remand Redetermination. However, given that the Court was not swayed by our analysis in the First Final Remand Redetermination, and given that, in *Crane I*, Commerce's findings were found to be not supported by substantial evidence when considering the entirety of the record, we explained, in the Second Draft Results 2021*,* that Commerce had considered *Crane I* and was no longer finding the ductile iron flanges to be within the scope of the *Order* under respectful protest. We continue to reach the same conclusion in these final results of redetermination, as Commerce has not identified any new evidence to support a determination that Crane's ductile iron flanges are within the scope of the *Order*.

Next, Crane alleged that the product catalogues were created and added to the record only at the remand stage of this proceeding, and that they did not exist as attachments to the original Petition. This is incorrect. These product catalogues were included as an attachment to the

---

[71] *Id*. at 3-4.
[72] *See Crane I* at 18-19.

Petition and were filed along with the Petition.[73] Therefore, these product catalogues were properly considered by Commerce as record evidence that could be used to determine scope coverage as information contained within the Petition. Further, Crane has offered no evidence for its statement that the petitioner altered the product catalogues, during the remand proceeding, to include flanges.[74] The product catalogues that were placed on the record of the prior remand proceeding are the same product catalogues that were included as an attachment to the Petition.[75] Next, we disagree with Crane's argument that including product catalogues in a petition would lead Commerce to find that the scope of an antidumping order covers all products in the catalogue. Under 19 CFR 351.225(k)(1), Commerce may properly examine information contained in a petition (including information contained in attachments) to aid in making a scope ruling. Therefore, we find that it was proper for Commerce to analyze the product information contained in the product catalogues provided in the Petition.

## V.   COMMENTS ON THIRD DRAFT RESULTS OF REDETERMINATION

On December 6, 2022, Commerce issued its draft results of redetermination and provided interested parties an opportunity to comment on the Third Draft Remand Redetermination.[76] Commerce received comments from the petitioner[77] and Crane.[78] These comments are addressed

---

[73] *See* Petition at Exhibit 2.
[74] *See generally*, Crane Comments.
[75] *See* Petition at Exhibit 2. The cover sheet of the Petition and Exhibit 2 of the Petition were also placed on the record of the underlying scope proceeding. *See* Memorandum, "Antidumping Duty Order on Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China: MCC Holdings dba Crane Resistoflex Scope Remand Redetermination," dated January 17, 2020, at Attachments 1 and 2 (which contain the cover sheet of the Petition and Exhibit 2, respectively, with a date stamp on the cover sheet establishing that the Petition and related Exhibit 2 were filed with Commerce on February 21, 2002.
[76] *See* Draft Results of Redetermination, *MCC Holdings dba Crane Resistoflex v. United States and Anvil International, LLC*, Court No. 18-00248, Slip Op. 22-128, dated December 6, 2022 (Third Draft Remand Redetermination).
[77] *See* Petitioner's Letter, "Non-Malleable Cast Iron Pipe Fittings from the People's Republic Of China/Comments On Draft Results Of Third Redetermination," dated December 12, 2022 (Petitioner Third Remand Redetermination Comments).
[78] *See* Crane's Letter, "Non-Malleable Cast Iron Pipe Fittings from China – Ductile Iron Lap Joint Flanges," dated December 12, 2022 (Crane Third Remand Redetermination Comments).

16

below.  After considering comments from the parties, we have not made any changes to our conclusion in the Third Draft Remand Redetermination in these final results of redetermination.

**Issue:       Commerce's Decision in the Third Draft Remand Redetermination**

*Crane's Comments*

Crane agrees with Commerce's finding that its ductile iron flanges are not within the scope of the *Order* and supports Commerce's statement that it will not do a separate scope ruling outside of its determination in these final results of redetermination.[79]

*Petitioner's Comments*

The petitioner reiterates its argument Commerce should find that Crane's ductile iron flanges are within the scope of the *Order*. Barring that conclusion, the petitioner states that if Commerce finds that Crane's ductile iron flanges are outside of the scope of the *Order*, it should continue to make this finding under respectful protest.[80]

**Commerce's Position:**

Given that Crane agrees with Commerce's determination in these final results of redetermination, we have no further comment on Crane's statements. Further, regarding the petitioner's comments, as noted above, we have stated that we are finding, under respectful protest, that Crane's flanges are not within the scope of the *Order*.

**VI.     CONCLUSION**

Based on the above analysis, Commerce continues to find Crane's ductile iron flanges to be outside the scope of the *Order*. As stated above, should the Court affirm these final results of redetermination, a *Federal Register* notice will be published stating that, consistent with the Court's holdings, Crane's ductile iron flanges are outside the scope of the *Order*. Further,

---

[79] *See* Crane Third Remand Redetermination Comments.
[80] *See* Petitioner Third Remand Redetermination Comments.

relevant instructions to CBP giving effect to the determination, as sustained by the Court, will also be issued at that time as appropriate.

12/16/2022

X 

Signed by: LISA WANG

Lisa W. Wang
Assistant Secretary
 for Enforcement and Compliance