Slip Op. 24-30

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| MCC HOLDINGS *doing business as* CRANE RESISTOFLEX, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> ASC ENGINEERED SOLUTIONS, LLC, <br><br> Defendant-Intervenor. | Before: Timothy C. Stanceu, Judge <br><br> Court No. 18-00248 |

OPINION

[Sustaining a remand redetermination submitted in response to court order in litigation contesting a scope ruling]

Dated: March 11, 2024

*Peter J. Koenig*, Squire Patton Boggs (US) LLP, of Washington, D.C., for plaintiff. With him on the submission were *Jeremy W. Dutra* and *Christopher D. Clark*.

*Joshua E. Kurland*, Trial Counsel, U.S. Department of Justice, of Washington, D.C., for defendant. With him on the submission were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, and *L. Misha Preheim*, Assistant Director. Of counsel was *W. Mitchell Purdy*, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, D.C.

*Daniel L. Schneiderman*, King & Spalding LLP, of Washington D.C., for defendant-intervenor.  With him on the submission was *J. Michael Taylor*.

Stanceu, Judge:  Plaintiff MCC Holdings dba Crane Resistoflex ("Crane"), an importer of certain ductile iron lap joint flanges ("Crane's flanges"), brought this action to contest an administrative decision by the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department") that its imported merchandise is within the scope of an antidumping duty order on certain pipe fittings from the People's Republic of China (the "Order").  *Notice of Antidumping Duty Order: Non-Malleable Cast Iron Pipe [Fittings] From the People's Republic of China*, 68 Fed. Reg. 16,765 (Int'l Trade Admin. Apr. 7, 2003) (the "*Order*").

Before the court is a redetermination upon remand (the "Third Remand Redetermination"), which Commerce submitted in response to the court's opinion and order in *MCC Holdings dba Crane Resistoflex v. United States*, 46 CIT __, 607 F. Supp. 3d 1201 (2022) ("*Crane II*").  Final Results of Redetermination Pursuant to Court Order (Dec. 19, 2022), ECF No. 64 (*"Third Remand Redetermination"*).

Commerce determined in the Third Remand Redetermination, under protest, that Crane's flanges are not subject to the Order.  Plaintiff has commented in favor of the Third Remand Redetermination.  Pl. MCC Holdings DBA Crane Resistoflex's Comments on Commerce Third Remand Redetermination (Jan. 3, 2023), ECF No. 66 ("Crane's Comments").  Defendant-intervenor, ASC Engineered Solutions, LLC

Court No. 18-00248                                                                                            Page 3

("ASC"), has commented in opposition. Def.-Intervenor's Comments on the Final Results of Remand Redetermination 1 (Jan. 3, 2023), ECF No. 67 ("ASC's 2023 Comments") (incorporating by reference Def.-Intervenor's Comments on the Final Results of Redetermination (Jan. 20, 2022), ECF No. 60 ("ASC's 2022 Comments")). Defendant argues that the court should enter judgment for the Government, maintaining that the Third Remand Redetermination is supported by substantial evidence and otherwise in accordance with law.

The court sustains the Third Remand Redetermination.

## I. BACKGROUND

Background on this case is presented in the court's prior opinions and is summarized and supplemented herein. *Crane II*, 46 CIT at __, 607 F. Supp. 3d 1202—03; *MCC Holdings dba Crane Resistoflex v. United States*, 45 CIT __, __, 537 F. Supp. 3d 1350, 1353—55 (2021) ("*Crane I*").

On August 29, 2018, Crane filed a request with Commerce for a scope ruling (the "Scope Ruling Request"), which advocated that Crane's flanges are outside the scope of the Order. *Non-Malleable Cast Iron Pipe Fittings from China: Ductile Iron Lap Joint Flanges, Scope Request* (P.R. Doc. 1) ("*Scope Ruling Request*").[1]  In the decision contested in this

---

[1] All citations to documents from the administrative record are to public documents. These documents are cited as "P.R. Doc. __."

Court No. 18-00248 Page 4

litigation, the "Final Scope Ruling," Commerce determined Crane's flanges to be within the scope. *Final Scope Ruling on the Antidumping Duty Order on Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China: MCC Holdings dba Crane Resistoflex* (P.R. Doc. 16) ("*Final Scope Ruling*"). Crane commenced this action to contest the Final Scope Ruling on December 19, 2018. Summons, ECF No. 1; Compl., ECF No. 2.

Crane moved for judgment on the agency record under USCIT Rule 56.2. Pl. MCC Holdings dba Crane Resistoflex's Rule 56.2 Mot. for J. on the Agency R. (Aug. 23, 2019), ECF No. 27. In response to Crane's motion, defendant filed an unopposed motion for this case to be remanded to Commerce in light of this Court's decision in *Star Pipe Prods. v. United States*, 43 CIT __, 365 F. Supp. 3d 1277 (2019) ("*Star Pipe I*"). Def.'s Unopposed Mot. to Stay Briefing Schedule and to Grant Voluntary Remand, (Dec. 30, 2019), ECF No. 32. *Star Pipe I* arose from litigation in which a plaintiff contested a scope ruling on ductile iron flanges that in many respects were similar to Crane's flanges. The court concluded in *Star Pipe I* that the final scope ruling at issue in that case did not reflect consideration of all of the factors (the "(k)(1) factors") Commerce was required to consider according to its regulation, 19 C.F.R. § 351.225(k)(1). The court granted defendant's motion in part and, considering the

**Court No. 18-00248**                                                                                                            Page 5

Department's requested remand too narrow, directed Commerce to reconsider the Final Scope Ruling in the entirety.[2]  Order 2 (Jan. 7, 2020), ECF No. 33.

Commerce submitted the first redetermination upon remand ("First Remand Redetermination") on April 3, 2020, in which it again concluded that Crane's flanges were within the scope of the Order.  Final Results of Redetermination Pursuant to Ct. Order, ECF No. 39-1 ("*First Remand Redetermination*").  In *Crane I*, the court remanded the First Remand Redetermination to Commerce, ruling that Commerce had failed to consider certain material evidence on the record that detracted from its determination and reached some conclusions that were unsupported by substantial record evidence.  *Crane I*, 45 CIT at __, 537 F. Supp. 3d at 1353.

Commerce filed a redetermination (the "Second Remand Redetermination") in response to *Crane I* on December 21, 2021, in which Commerce ruled, under protest, that Crane's flanges were outside the scope of the Order.  Final Results of Redetermination Pursuant to Court Order, ECF No. 58-1.  The court concluded in *Crane II* that the Second Remand Redetermination was preliminary to an actual scope determination and, therefore, not in a form in which it could go into effect if sustained upon judicial review.

---

[2] The court recently sustained the Department's determination, submitted under protest following this court's decision in *Star Pipe Prods. v. United States*, 46 CIT __, 607 F. Supp. 3d 1192 (2022) ("*Star Pipe IV*"), that Star Pipe's flanges are outside the scope of the Order.  *Star Pipe Prods. v. United States*, 48 CIT __, Slip Op. No. 24-28 (Mar. 6, 2024) ("*Star Pipe V*").

Court No. 18-00248                                                                                           Page 6

*Crane II*, 46 CIT at \_\_, 607 F. Supp. 3d at 1209 (2022). Concluding that the Second Remand Redetermination "does not allow the court to perform its essential judicial review function," *Crane II* ordered Commerce to issue a determination that would go into effect if sustained upon judicial review. *Id*. *Crane II* held, further, that the Second Remand Redetermination "misconstrues *Crane I* to conclude that the court made 'findings' and implies that Commerce is reaching the decision to exclude Crane's flanges from the Order out of a need to implement those 'findings.'" *Id*. *Crane II* clarified that the court did not make findings in *Crane I* nor did it direct the result. *Id*. The opinion and order in *Crane II* added that a decision on whether Crane's flanges are within the scope of the Order "is a determination for Commerce to make upon remand." *Id*., 46 CIT at \_\_, 607 F. Supp. 3d at 1208.

## II. Discussion

### A. Jurisdiction and Standard of Review

The court exercises subject matter jurisdiction under section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(c), which grants jurisdiction over civil actions brought under section 516A of the Tariff Act of 1930, 19 U.S.C. § 1516a.[3] Among the decisions that may be contested according to section 516A is a determination of

---

[3] Citations to the United States Code and to the Code of Federal Regulations are to the 2018 editions.

Court No. 18-00248                                                                                          Page 7

"whether a particular type of merchandise is within the class or kind of merchandise described in an . . . antidumping or countervailing duty order." *Id*. § 1516a(a)(2)(B)(vi). In reviewing an agency determination, the court must set aside any determination, finding, or conclusion found "to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." *Id*. § 1516a(b)(1)(B)(i).

## B.  The Scope Language of the Order

The Order contains language (the "scope language") defining the merchandise that is within the scope of the Order, as follows:

> [F]inished and unfinished non-malleable cast iron pipe fittings with an inside diameter ranging from 1/4 inch to 6 inches, whether threaded or unthreaded, regardless of industry or proprietary specifications.  The subject fittings include elbows, ells, tees, crosses, and reducers as well as flanged fittings.  These pipe fittings are also known as "cast iron pipe fittings" or "gray iron pipe fittings."  These cast iron pipe fittings are normally produced to ASTM A-126 and ASME B.16.4 specifications and are threaded to ASME B1.20.1 specifications.  Most building codes require that these products are Underwriters Laboratories (UL) certified.  The scope does not include cast iron soil pipe fittings or grooved fittings or grooved couplings.
>
> Fittings that are made out of ductile iron that have the same physical characteristics as the gray or cast iron fittings subject to the scope above or which have the same physical characteristics and are produced to ASME B.16.3, ASME B.16.4, or ASTM A-395 specifications, threaded to ASME B1.20.1 specifications and UL certified, regardless of metallurgical differences between gray and ductile iron, are also included in the scope

Court No. 18-00248 Page 8

of this petition.[4]  These ductile fittings do not include grooved fittings or grooved couplings.  Ductile cast iron fittings with mechanical joint ends (MJ), or push on ends (PO), or flanged ends and produced to the American Water Works Association (AWWA) specifications AWWA C110 or AWWA C153 are not included.

*Order*, 68 Fed. Reg. at 16,765.

### C. The Scope Ruling Request and the Final Scope Ruling

The Scope Ruling Request described nine models of ductile iron "lap joint" flanges. *Final Scope Ruling* at 1.  Each model is a single disc-shaped article made of ductile iron with an unthreaded center hole. *Scope Ruling Request* at Ex. 1.  Surrounding the center hole are smaller, equally spaced, unthreaded holes that are present to accommodate bolts used in assembling a joint between the ends of two plastic-lined pipes. *Id.* at 2, Ex. 1.  The Scope Ruling Request states that Crane's Flanges "are for a line of plastic lined piping at Crane Resistoflex in Marion, NC, USA for use in process piping primarily for the chemical process industry." *Id.* at 2.

The Scope Ruling Request described an assembled "lap joint" as consisting of two flanges, a gasket placed between the flanges, and a set of bolts and nuts that are used as the means of clamping the two flanges together. *Id.* at 3, Ex. 1.  The Scope

---

[4] The word "petition" is incorrectly included in the scope language as it appears in the Order. *Notice of Antidumping Duty Order: Non-Malleable Cast Iron Pipe Fittings From the People's Republic of China*, 68 Fed. Reg. 16,765 (Int'l Trade Admin. Apr. 7, 2003). The apparent intent was a reference to the antidumping duty order instead.

Ruling Request added that "[t]here is no pipe fitting attached to the subject Flanges." *Id.* at 3.

The Scope Ruling Request stated that Crane's Flanges are described by industry standard ASME B16.42, pointing out that this industry standard does not consider flanges to be "fittings." *Id.* at 4. It stated that "the standard B16.42 by its title covers 'Ductile Iron Pipe <u>Flanges</u> and Flanged <u>Fittings</u> Classes 150 and flange 300.'" *Id.* at 4.

The Final Scope Ruling concluded that five of the nine flanges described in the Scope Ruling Request—those with inner diameters of 1.938 inches to 4.615 inches, inclusive—are subject to the Order and that the remaining four flanges, having inner diameters greater than 6 inches, are not. *Final Scope Ruling* at 1. Commerce reasoned that Crane's flanges are described by the term "fittings" (or the synonymous term "pipe fittings") as used in the scope language in the Order and, because they are made of ductile iron, rather than non-malleable cast iron, are described by the first sentence of the second paragraph of the scope language. *Final Scope Ruling* at 10—12. In pertinent part, the sentence is as follows: "Fittings that are made out of ductile iron that have the same physical characteristics as the gray or cast iron fittings subject to the scope above . . . are also included in the scope of this petition." *Order*, 68 Fed. Reg. at 16,765.

Court No. 18-00248 Page 10

### D. The Third Remand Redetermination

In the Third Remand Redetermination, as it did in the Second Remand Redetermination, Commerce determined under protest that Crane's flanges are outside the scope of the Order. In reaching this conclusion, Commerce reasoned that it "must take into account" the (k)(1) factors as set forth in 19 C.F.R. § 351.225(k)(1). *Third Remand Redetermination* at 8. The (k)(1) factors are "[t]he descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary (including prior scope determinations) and the [U.S. International Trade] Commission ['ITC' or the 'Commission']." 19 C.F.R. § 351.225(k)(1). The Third Remand Redetermination states that "in consideration of *Crane I* and *Crane II* and further review of the evidence on the record, under respectful protest, we find that the sources identified in 19 CFR 351.225(k)(1) do not support a finding that the ductile iron flanges are within the scope of the *Order*." *Third Remand Redetermination* at 7 (footnote omitted).

In response to the court's objection in *Crane II*, Commerce stated in the Third Remand Redetermination that "should the Court affirm these final results of redetermination, a *Federal Register* notice will be published stating that, consistent with the Court's holdings, Crane's ductile iron flanges are outside the scope of the *Order*." *Third Remand Redetermination* at 17. Commerce added that "relevant instructions to

[Customs and Border Protection] giving effect to the determination, as sustained by the Court, will also be issued at that time as appropriate." *Id.* at 18.

### E.  Comments on the Third Remand Redetermination

Crane supports the Third Remand Redetermination, stating that "Commerce correctly held that Crane flanges are not subject to the pertinent antidumping order, when rendering a decision in accordance with law and record facts, per this Court's decisions."  Crane's Comments 1.

Arguing that it merely reformats the Department's previous decision rather than make any new findings, ASC opposes the Third Remand Redetermination and incorporates by reference its comments opposing the Second Remand Redetermination. ASC's 2023 Comments 1.  Taking the position that both the Second and Third Remand Redeterminations are unsupported by substantial evidence and otherwise not in accordance with law, ASC maintains that "Commerce, acting 'under protest,' erred by (1) finding that the Court directed a particular result, (2) improperly ignoring the plain meaning of the scope in favor of interpretations of certain '(k)(1)' materials, and (3) finding that it lacked discretion to interpret certain key language in the report of the International Trade Commission." *Id*. at 2.

Defendant responds to the comment submissions by stating that "the Court should sustain the Third Remand Results and enter final judgment for the Government

because Commerce has complied with the Court's remand order and because the Third Remand Results are supported by substantial evidence and otherwise lawful." Def.'s Resp. to Comments on Remand Results 1 (Jan. 13, 2023), ECF No. 68.

The court agrees with the position of the Government and Crane that the Third Remand Redetermination is supported by substantial evidence on the record and otherwise accords with law. For the reasons stated below, the court disagrees with ASC's position to the contrary.

### F. Commerce Was Required to Consider the Factors in 19 U.S.C. § 351.225(k)(1)

ASC argues that because the scope language of the Order unambiguously includes ductile iron flanges such as Crane's, Commerce should not have considered the (k)(1) factors. ASC's 2022 Comments 2—3 ("There being no ambiguity, that should have been the end of the matter; there was no justification to consider the '(k)(1)' materials." (footnote omitted)). This argument is unpersuasive because the scope language, although using the term "fittings" (and, synonymously, "pipe fittings"), does not define the term and on its face does not resolve the issue of whether flanges in general, or ductile iron flanges in particular, were within the intended meaning of that term.

Consideration of the (k)(1) factors not only was required by the plain language of the regulation, 19 C.F.R. § 351.225(k)(1), as applied to this proceeding but also was

essential to the Department's determining, for purposes of the Third Remand Redetermination, whether ductile iron flanges were within the scope of the Department's and the ITC's investigations.[5] As discussed below, considerable record evidence pertaining to the (k)(1) factors supports the Department's decision in the Third Remand Redetermination that Crane's flanges are outside the scope of the Order.

### G. Substantial Evidence Supporting the Department's Determination that Crane's Flanges Are Not Within the Scope of the Order

The court, as does defendant, disagrees with ASC's comment that the Third Remand Redetermination is unsupported by substantial evidence on the record. In its previous opinions, the court identified certain evidence that detracted from the Department's earlier findings and that Commerce needed to consider, which it now has done. As the court discussed in *Crane I*, 45 CIT at __, 537 F. Supp. 3d at 1358—60, among the evidence earlier overlooked was certain evidence contained in the "ITC Report," which was the report of the affirmative determination of threat to the domestic industry issued by the ITC during the antidumping duty investigation. *See Non-Malleable Pipe Fittings from China*, Inv. No. 731-TA-990 (Final), USITC Pub. No. 3586 (Mar. 2003) (P.R. Docs. 18–21, Attach. IV) ("*ITC Report*"). The ITC Report contained

---

[5] An amendment to 19 C.F.R. § 351.225(k), effective as to scope applications filed on or after November 4, 2021, does not apply to this proceeding. *See Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws; Final Rule*, 86 Fed. Reg. 52,300, 52,327 (Sept. 20, 2021).

Court No. 18-00248                                                                                          Page 14

evidence that the ITC considered ductile iron flanged fittings to be outside the scope of its investigation. *Crane I,* 45 CIT at __, 537 F. Supp. 3d at 1359. As *Crane I* further stated, "[n]oteworthy is evidence showing that ductile iron flanges share a defining physical characteristic with ductile iron flanged fittings, i.e., a flange" and "that the ITC Report does not discuss flanges (as opposed to flanged fittings) in describing the merchandise it considered to be within the scope of its own investigation." *Id*.

In its 2022 comments, ASC objected that the express exclusions in the scope language for certain ductile iron flanged fittings would be "superfluous" if all ductile iron flanged fittings were considered to be outside the scope of the Order. ASC's 2022 Comments 3—4. ASC also opined that the ITC Report is "ambiguous" on the issue of whether the ITC intended to exclude ductile iron flanged fittings from the scope of its investigation. As *Crane I* pointed out in responding to a similar analysis in the First Remand Redetermination, "[t]his conclusion misses the point" by "overlook[ing] the significance of the ITC's discussion of its domestic like product and the scope of the ITC's investigation" (which the ITC stated were the same). The ITC was aware of the specific exclusion Commerce provided for certain goods conforming to specifications of the American Water Works Association, "and the ITC expressed no disagreement with respect to it." *Crane I*, 45 CIT at __, 537 F. Supp. 3d at 1359 (citation omitted). "But apart from that, the ITC, based on its own investigation, still determined that *all* ductile

**Court No. 18-00248**                                                                                 **Page 15**

flanged fittings were outside the scope of the domestic like product, and therefore also outside the scope of its own injury/threat investigation." *Id*. As *Crane I* explained:

> It is axiomatic that under the antidumping duty statute as it applies in this case, Commerce may impose antidumping duties on a good only following a determination by Commerce that the good is 'unfairly traded,' i.e., that it was the subject of an affirmative less-than-fair-value determination by Commerce and also was included within the goods investigated by the ITC and thereby found to have resulted in material injury or the threat of material injury to the domestic industry. *See* 19 U.S.C. § 1673. By requiring Commerce to consider 'the descriptions of the merchandise contained in . . . the determinations of . . . the Commission,' 19 C.F.R. § 351.225(k)(1), when ruling on a scope issue, the Department's regulations embody this principle.

*Id*., 45 CIT at __, 537 F. Supp. 3d at 1359—60. While ASC characterizes the ITC Report as "ambiguous" as to whether ductile iron flanged fittings were within the scope of the ITC's investigation, what is not ambiguous is that the ITC defined the domestic like product as corresponding to the scope of its investigation and did *not* broaden the scope of the domestic like product to include ductile iron flanged fittings. *Id*., 45 CIT at __, 537 F. Supp. 3d at 1359 (quoting *ITC Report* at 8). The intent of the ITC to exclude ductile iron flanged fittings from its investigation, and the absence in the ITC Report of a general discussion of "flanges" (or ductile iron flanges in particular, such as Crane's), lent support to the decision in the Third Remand Redetermination to exclude Crane's flanges from the scope of the Order.

**Court No. 18-00248**                                                                                     Page 16

      The evidence in the ITC Report is not the only evidence that supports the Department's conclusion in the Third Remand Redetermination that Crane's flanges are not within the scope of the Order. The Petition ("Petition"), *Petition for Imposition of Antidumping Duties: Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China*, A-570-875 (Feb. 21, 2002) (P.R. Docs. 18–21, Attach. I) ("*Petition*"), while containing certain brochures as exhibits that illustrate flanges, did not identify flanges in the body of the document as a class or kind of goods that was intended to be covered by the requested investigation. *Id.*, 45 CIT at __, 537 F. Supp. 3d at 1357 ("Neither the body of the Petition, nor the scope language of the Order that culminated from the investigation it launched, specifically addresses flanges."). The Petition also stated that "[v]irtually all subject fittings are used in fire protection systems and in the steam heat conveyance systems used in old inner cities," *id.*, 45 CIT at __, 537 F. Supp. 3d at 1358 (citing *Petition* 4); the Scope Ruling Request stated that Crane's flanges were for use in process piping primarily for the chemical process industry. *Scope Ruling Request* at 2.

      The Scope Ruling Request stated, further, that Crane's Flanges are described by industry standard ASME B16.42, and that this industry standard does not consider flanges to be "fittings." *Id.* at 4. ("[T]he standard B16.42 by its title covers 'Ductile Iron Pipe Flanges and Flanged Fittings Classes 150 and flange 300'"). Throughout this proceeding, Commerce has considered ductile iron flanged fittings (which the ITC did

not consider to be part of its investigation) and ductile iron flanges to be different classes of merchandise. Nevertheless, in the Final Scope Ruling and the First Remand Redetermination Commerce deemed Crane's flanges to be "fittings" based on logic that is open to question: how could a "flange" that, according to the Department's previous position, is also a "fitting" be something other than a "flanged fitting"? The Third Remand Redetermination avoids this apparent contradiction by determining, based on the evidence considered on the whole, that Crane's ductile iron flanges are not within the scope of the Order.

### III. Conclusion

The Department's determination that Crane's flanges are not within the scope of the Order is supported by substantial evidence on the record considered as a whole and is otherwise in accordance with law. The court disagrees with ASC's comments to the contrary for the reasons discussed above. Judgment sustaining the Third Remand Redetermination will enter accordingly.

As provided in the Third Remand Redetermination, the Judgment will direct Commerce to publish a Federal Register notice of the Department's determination that Crane's ductile iron flanges are outside the scope of the Order and to issue, at that time,

**Court No. 18-00248** **Page 18**

relevant instructions to Customs and Border Protection effectuating that determination.

*Fourth Remand Redetermination* 17—18.

/s/ Timothy C. Stanceu
Timothy C. Stanceu, Judge

Dated:   March 11, 2024
         New York, New York